**PENKER CONSTRUCTION COMPANY et al., Appellants,**

**v.**

**Jack FINLEY et al., Appellees.**

Court of Appeals of Kentucky.

June 30, 1972.

Rehearing Denied Oct. 20, 1972.

Charles Landrum, Jr., Landrum & Patterson, Lexington, for Penker Constr. Co.

Henry R. Wilhoit, Jr., Wilhoit & Wilhoit, Grayson, for Brandeis Machinery & Supply Corp.

B. L. Kessinger, Jr., Harbison, Kessinger, Lisle & Bush, Lexington, for International Harvester Co.

Robert P. Woods, Gray, Woods & Cooper, Ashland, for Drott Manufacturing Corp.

Eldon L. Webb, Ashland, for Jack Finley.

H. Gene Baldridge, Ashland, for U. S. Fidelity and Guaranty Co.

NEIKIRK, Justice.

Jack Finley was seriously injured while operating a 250 International Harvester skid shovel, referred to as an "end loader," in employment by the Penker Construction Company (hereinafter referred to as "Penker") at a job site in Carter County. Finley had been a heavy equipment operator for more than seventeen years. Before the accident, he had been operating a large power shovel, loading rock and other debris into dump trucks. The shovel broke down. In order that the work might progress, Penker obtained an end loader from the Brandeis Machinery and Supply Company (hereinafter referred to as "Brandeis"). The equipment was put into service by Penker on October 13, 1964. Nelson Duncan, a Penker employee, operated the end loader without incident for approximately nine hours until 3 a. m. on October 14. At 7 a. m., Finley was assigned the task of operating the machine. After checking the fuel and controls, he started to work. Because of the nature of the area in which he was working, it was necessary that Finley scoop the rock into the bucket, back the loaded equipment a short distance, elevate the load, and then dump the contents into a dump truck. About 10:30 a. m., Finley scooped up an average size load of rock. A large rock was on top of the load. Finley elevated the bucket from ten to twelve feet, put the end loader in reverse, and turned to look over his shoulder. He stated that at that time he heard a loud popping or

cracking sound emanating from the front of the machine, and as he turned to face the bucket, he saw it tilt toward him. The large rock came crashing down and landed in Finley's lap, pinning him to the seat and causing his injuries. Finley lost control of the end loader and it continued in reverse for approximately ten feet and ran partly up the face of a rock wall. The machine was equipped with a lifter throttle, requiring the operator to press in to deaccelerate and to let out to accelerate. When Finley lost control, the motor ran wide open. When the loader backed up the face of the wall, the rock slid off Finley and came to rest on the tilt jacks of the machine. Finley slid out of the seat, fell to the ground, and crawled away. He testfied that the popping sound he heard came from the breaking of tilt cylinders. He stated that he had never heard one break before but, as an experienced heavy equipment operator, he "knew" that the tilt cylinders had broken.

Finley instituted this action against Brandeis, the company which had furnished the end loader to Penker, Finley's employer. Brandeis, by a third-party complaint for indemnity, brought Penker into the suit, under the indemnity clause of their contract. Brandeis and Penker joined in a fourth-party complaint against International Harvester and Drott Manufacturing Company. International Harvester had assembled the end loader, using tilt jacks and tilt cylinders manufactured and furnished by Drott. Brandeis sought indemnity against International on the allegation that any defect in the end loader existed prior to its sale by International Harvester to Brandeis. International Harvester filed a cross-claim against Drott, seeking recovery over against Drott for any recovery adjudged against International Harvester in favor of Brandeis and Penker.

At the trial of all issues, the jury returned a general verdict against Brandeis, awarding the sum of $20,716.04 to Finley for his injuries and damages. The jury answered an interrogatory affirming the proposition that the end loader was defective and dangerous at the time it was delivered by Brandeis to Penker. In a separate interrogatory, the jury determined that the defect was in the end loader at the time International Harvester sold it to Brandeis. Brandeis was given a judgment over against Penker; Penker and Brandeis were given judgment over against International Harvester; and International Harvester was granted judgment over against Drott, the manufacturer of the tilt jacks and cylinders. Thus, Drott, as manufacturer of the defective parts on the end loader, was held responsible to the other parties, including Brandeis, for the judgment obtained by Finley against Brandeis. Brandeis, Penker, International Harvester, and Drott filed separate appeals.

The four appellants contend that the trial court erred in failing to grant their motions for a directed verdict at the conclusion of Finley's evidence and at the conclusion of all the evidence. They contend that the evidence as presented was not sufficient to raise a jury question of a defect in the end loader.

It is admitted that both tilt cylinders were broken. Finley contends that the tilt cylinders broke, causing the bucket to tilt toward him, while he was operating the machine in reverse. He maintains that the breaking of the tilt cylinders caused the rock to fall on him, and that after the end loader struck the rock cliff, the rock rolled off him and hit the tilt jacks, breaking them. The appellants contend that the end loader hit the rock wall and that this impact dislodged the rock from the bucket, causing it to fall on and break the tilt jacks and the cylinders before it landed in Finley's lap. In support of appellants' claim as to when the rock fell, Amos Winthrow was introduced as a witness. Winthrow was working as a laborer for Penker, scaling rock from the top of a ledge about seventy-five feet above the scene of the accident. In describing the work Finley was doing, Winthrow stated that the rock which fell on Finley was on top of the load

and that the load in the bucket was "average." On direct examination, Winthrow stated as follows:

"Q.—67 The only thing I want to know is, did the rock fall on to the end loader before Finley backed into the rock wall?

A. No, sir."

On cross-examination, Winthrow testified:

"Q.—12 But you didn't see the rock fall?

A. I could make that statement I didn't see it fall."

\* \* \* \* \* \*

"Q.—33 You told the jury you didn't see the rock fall and consequently you don't know whether it got back against the bank or not. Really? You know that or not?

A. I would have to take, if they will, I will give that answer to the question. My honest opinion toward the thing; that's far as I could tell. No, I was blocked by the view of the bucket."

Perhaps the most damaging evidence, as far as the appellants are concerned, as to when the rock fell was the testimony of Winthrow concerning the position of the bucket immediately before the rock tumbled off the load. He was shown photographs taken after the accident, which showed the bucket tilted toward the operator's seat. He stated that when he saw the rock in the bucket in the tilted position, the machine had not come into contact with the rock cliff and was some distance from the point where the end loader struck the solid rock wall.

Appellants also contend that Finley's evidence at best established only speculation that the accident was caused by the alleged defect in the tilt cylinders. Briner v. General Motors Corporation, Ky., 461 S.W.2d 99 (1970). It is further contended that the verdict was based upon pyramiding inferences entirely speculative in character and that such evidence is not sufficient to support a jury verdict, Klingenfus v. Dunaway, Ky., 402 S.W.2d 844 (1966), and that the probabilities are equal of this accident's having occurred in two or more different ways; therefore, no jury issue was established. Schuster v. Steedley, Ky., 406 S.W. 2d 387 (1966).

■ We hold that the evidence and circumstances in the instant case are ample to warrant a reasonable inference of causation. Bartley v. Childers, Ky., 433 S.W.2d 130 (1968).

Mr. Swanson, an expert engineer, testified for the appellants. He stated that the jacks were designed to prevent the bucket from tilting toward the operator. In our opinion, the evidence was sufficient to tilt the balance from mere possibility to probability. Highway Transport Co. v. Daniel Baker Co., Ky., 398 S.W.2d 501 (1965).

A defect in a product and that it was the legal cause of harm may be proved by circumstantial evidence. Holbrook v. Rose, Ky., 458 S.W.2d 155 (1970). Here, we have direct evidence that the tilt cylinders broke in normal use. This, when coupled with the circumstantial evidence, made a jury issue. The fact that the jury accepted Finley's version of what happened, as opposed to that of the appellants', and that the two versions are drastically conflicting does not indicate that the jury's decision was based entirely on speculation.

■ Appellants point out that Finley failed to produce any evidence as to exactly when the tilt cylinders became defective. In our opinion, the evidence and circumstances in this case are sufficient to warrant a reasonable inference that the tilt cylinders were in a defective state at the time of manufacture. Kroger Company v. Bowman, Ky., 411 S.W.2d 339 (1967);

Frumer & Friedman, Products Liability, Section 11.01(4).

The motions for a directed verdict were properly overruled by the trial court.

Having found that there was sufficient evidence to take the case to the jury, we further find that the trial court acted properly in granting indemnity to Brandeis and Penker on their fourth-party complaint against International Harvester and Drott Manufacturing Company. Kroger Company v. Bowman, supra; Dealers Transport Co. v. Battery Distributing Co., supra; Brown Hotel Co. v. Pittsburgh Fuel Co., 311 Ky. 396, 224 S.W.2d 165 (1949); 13 ALR3d 1057.

■ Drott separately contends that the trial court erred in overruling Drott's motion to quash service of summons. We do not agree. Drott contends that it was merely shipping parts to dealers in Kentucky and was not "doing business in Kentucky" under the provisions of KRS 271.610. Drott had no offices or agents in Kentucky, but it did manufacture merchandise which it placed on the consumer market in Kentucky via mail order and occasional visits of its representatives to Kentucky companies. It is our opinion that Drott, by these activities, was subject to service of process through the Secretary of State of Kentucky. Post v. American Cleaning Equipment Corporation, Ky., 437 S.W.2d 516 (1968).

■ The trial court did not err in granting Brandeis indemnity against Penker. Brandeis was originally sued by Finley, and brought Penker into the suit on a third-party complaint based solely on an indemnity provision in the contract under which Penker leased the end loader from Brandeis with an option to purchase. In our opinion, the indemnity provision in the contract is all-inclusive and so broad in its scope as to clearly uphold Brandeis' indemnity against Penker. The lease agreement used the broadest possible terms, and if Penker had not intended to be bound by the agreement, it should not have entered into the contract in the first place. Having determined that Brandeis is entitled to indemnity against Penker, we need not discuss whether or not the question was preserved by Penker for appellate review.

Penker, Drott, and International Harvester contend that the trial court erred in failing to grant to each of the appellants three peremptory challenges to the jury. The trial court permitted each of the four appellants only two peremptory challenges because there were only twenty-six jurors present and available for trial duty. Finley was granted three challenges.

KRS 29.290 provides that "each party litigant" in a civil action shall have the right of peremptory challenge to three jurors. This has been construed to mean that each party in cases involving multiple parties is entitled to three challenges only if the interests of the parties are antagonistic and their defenses inconsistent. District Union Local 227, Amal. Meat Cut., etc. v. Fleischaker, Ky., 384 S.W.2d 68 (1964); R. E. Gaddie, Inc. v. Evans, Ky., 394 S.W. 2d 118 (1965). The appellants contend that their trial interests were antagonistic and hostile to each other because of the third and fourth-party complaints, cross-claims, and other pleadings filed.

■ Appellee Finley argues that Brandeis and Penker should be considered as one party litigant for purposes of peremptory challenges, pointing out that their trial positions were essentially the same and their general positions not hostile. The same is advocated as to International Harvester and Drott. We adopt this position and we consider that each "set" of party litigants received four peremptory challenges. The jury issues presented at the trial did not affect the interests and the parties so diversely as to necessitate the allowance of three peremptory challenges to each party. If parties on the same side have identical trial positions, they are not entitled to three strikes each. Wells v. Conley, Ky., 384 S.W.2d 496 (1964). The

purpose of the peremptory challenges is to afford parties a fair trial on the issues to be tried. In the instant case, the basic issues for trial were such that we find no error in the failure of the trial court to give each defendant three peremptory challenges.

■ Penker, Drott, and International Harvester all contend that Finley was guilty of misuse of the end loader and was contributorily negligent as a matter of law. Appellants argue that Finley misused the equipment, in elevating the bucket to an angle of 45° and operating the end loader in reverse with the bucket in its raised position. Appellants point out that an operation handbook had been furnished with the end loader and that Finley had failed to follow its instructions. It is not clear from the evidence whether Finley had read the manual. In any event, we do not believe that a manual packaged with the end loader at some stage during its manufacture or assembly offering suggested methods of operation, care, and handling established a standard of care by which the operator, Finley, should be charged. There was evidence that the practice on the job by the operators was different from that suggested in the manual. There was no requirement that the operators of the end loader read the manual, let alone follow its directions. Under these circumstances, the manual did not establish a standard of care by which Finley could be adjudged contributorily negligent as a matter of law. We feel that the evidence in this case is such that fair-minded and impartial factfinders could conclude that Finley's operation of the machine was reasonable. Finley was operating the equipment in a manner consistent with its manufactured purposes. The question of alleged negligence was properly submitted to the jury. W. L. Harper Company v. Slusher, Ky., 469 S.W.2d 955 (1971).

■ International Harvester and Drott contend that the trial court erred in refusing to submit instructions requiring the jury to find that the tilt cylinders were manufactured in an unreasonably dangerous condition. Instruction #1, in so far as pertinent, required a finding that "(a) Said end loader was in fact defective and dangerous * * *." Appellants point out that strict liability by a seller of a product is based on Section 402A of the Restatement of Torts, which imposes liability on "One who sells any product in a defective condition unreasonably dangerous to the user * * *." In applying this concept, we have held: "It is sufficient that there be proof that the product was manufactured in a defective condition unreasonably dangerous to the user * * *." Allen v. Coca-Cola Bottling Co., Inc., Ky., 403 S.W.2d 20 (1966). Drott and International Harvester submitted instructions which would have presented the issue of whether the end loader was "defective and unreasonably dangerous." Although the trial court's instruction did not use the words "unreasonably dangerous," the alleged error did not adversely affect the substantial rights of the parties. CR 61.01. The pleadings, evidence, and circumstances presented in this case gave the obvious and unmistakable indication that the defect, if any, was unreasonably dangerous. It would have been better had the trial court's instruction included the words "unreasonably dangerous," but we do not consider the omission fatal to Finley's recovery in the instant case.

Drott insists, and International Harvester concurs in the proposition, that the interrogatories submitted to the jury along with the general instructions did not sufficiently advise the jury of the basis upon which it should render a verdict. Interrogatories #2 and #3 asked the jury to decide if the end loader was defective when Brandeis delivered the equipment to Penker and if the alleged defect was present at the time International Harvester delivered the machine to Brandeis. The jury answered both interrogatories in the affirmative. These interrogatories, in effect, resolved the issues of indemnity posed by the third and fourth-party complaints.

■ The instructions, taken together with the interrogatories, properly presented

the issues of liability of the parties under CR 49.02. Additional instructions were not necessary. We find the jury was not misled. The trial court required the jury to find a general verdict, and it properly submitted the interrogatories which required specific answers to major issues. Clement Brothers Construction Co. v. Moore, Ky., 314 S.W.2d 526 (1958). The instructions and the interrogatories were neither erroneous nor prejudicial to International Harvester or Drott.

■ Drott maintains that Al Myrick's testimony should have been suppressed by the trial court. It is true that Myrick was not an expert in engineering or metals. Myrick was not introduced as an expert witness. His testimony was based on fifty years' experience as a heavy equipment operator and mechanic. He disassembled the tilt jacks and tilt cylinders after the accident. He stated that he found both cylinders had been broken. He testified that one break was shiny and the other break was blue and had some rust on the metal. He did express an opinion to the effect that one break was new and one break was older. We believe this opinion was within the realm of his practical experiences. The trial court did not err in permitting Myrick to testify.

Drott contends that the trial court committed prejudicial error when the jury attempted to return its verdict. We have examined the proceedings surrounding the jury verdict, and we are of the opinion that the trial court did not err in the manner of polling the jury, and permitting the signing of the verdict by the jurors, in open court. Neither do we find error in the trial court's sending the jury back to the jury room to deliberate further and reach a verdict on one of the interrogatories, when it was apparent that no verdict had been reached by at least nine of the jurors on this issue. We do not consider it essential to detail the entire proceedings surrounding the return of the verdict. In our opinion, the trial court acted with extreme restraint and fairness to all parties during this stage of the trial. Especially is this true when we realize the trial court was buffeted on all sides by a bevy of lawyers, each insisting that the court rule in his favor. The verdict of the jury was, in our opinion, fairly rendered under the proper directions and control of the trial court.

■ Drott's final contention is that the jury's award of $15,521.20 to Finley for loss of wages was excessive and not supported by the evidence. Finley testified that he lost wages for a period of thirty weeks and two days and that he would have earned during that time $264 a week, or a total of $8,012. Finley stated that he lost an additional thirty-nine weeks by reason of his injury, and that this represented a total loss of $7,800. His loss in wages, according to Finley, was $15,812. The jury accepted Finley's version. The jury verdict was within the range of Finley's claim for lost wages. The award for lost wages was not excessive and was supported by the evidence.

The judgment is affirmed.

All concur.