Margaret **BENNET**, Plaintiff,

v.

The **CINCINNATI CHECKER CAB CO., INC.**, et al., Defendants.

No. 1666.

United States District Court,
E. D. Kentucky, Covington Division.

Jan. 22, 1973.

Frank M. Zier, Cincinnati, Ohio, for plaintiff.

Robert O. Smith, Cincinnati, Ohio, and John L. Spalding, Covington, Ky., for Cincinnati Checker Cab Co.

Robert Cetrulo, Covington, Ky., for Omega Import and Alfred Light.

## MEMORANDUM

SWINFORD, District Judge.

The record of this case is before the court on the motion by defendant, Omega Import Company, to quash service of process, or, in the alternative, for summary judgment. The parties having been placed on terms to do so have filed briefs and the motions are now before the court for decision.

The complaint states that on August 11, 1971, plaintiff, Margaret Bennet, hired a taxi to transport her from her place of employment in Newport to her home in Covington, Kentucky. It is further alleged that at her destination the driver, an ex-convict, shot her with a revolver imported by the defendant, Omega Import Company. To recover for her alleged damages, plaintiff has sued, among others, Omega Import Company. Service on Omega was affected through the Kentucky Secretary of State pursuant to KRS 454.210.

Omega Import Company is a sole proprietorship under the exclusive control of Alfred Light, defendant, with its principal place of business in New York City. Omega's uncontroverted affidavit states as follows: It has never maintained agents or a business office in Kentucky and it is not incorporated or licensed to do business within this state; its sole contact with Kentucky is the mail-order shipment of firearms to licensed dealers in response to occasional telephone solicitations; the weapon allegedly used to injure plaintiff was mailed to a Newport, Kentucky, gun dealer on June 3, 1968; income from Kentucky orders amounted to five percent of Omega's total income during 1968. Omega claims service of process should be quashed because this court lacks *in personam* jurisdiction.

It is well settled that, so long as the requirements of due process enunciated in International Shoe Company v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), are observed, the law of the forum determines whether service is proper. Velandra v. Regie Nationale des Usines Renault, 336 F.2d 292 (6th Cir. 1964). The relevant Kentucky statute is KRS 454.210; there, jurisdiction over nonresidents is predicated on the extent of certain delineated local business relations. Plaintiff claims the Kentucky requirements are satisfied since Omega's local conduct falls within one of the following activities noted in Section (2)(a) of this statute:

"1. Transacting any business in this Commonwealth;

2. Contracting to supply services or goods in this Commonwealth;

3. Causing tortious injury by an act or omission in this Commonwealth."

It must initially be recognized, as outlined in the International Shoe case, supra, that these factors cannot be rigidly applied:

"It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be . . . mechanical or quantitative." 326 U.S. at 319, 66 S.Ct. at 159.

The few Kentucky opinions construing the "doing business" requirement involve facts somewhat different from those presented in this case. The existence of a contractual relationship led the court, in Post v. American Cleaning Equipment Corp., 437 S.W.2d 516 (Ky. 1969), to hold that the "doing business" criterion was satisfied. In Field En-

terprises Educational Corp. v. Hopkins, 378 S.W.2d 797 (Ky.1964), the defendant "not only employed salesmen in this state but had a 'division manager' who maintained an office in Louisville." There was thus little doubt that the corporation was subject to suit in Kentucky.

The most recent Kentucky case concerning this problem is Penker Construction Co. v. Finley, 485 S.W.2d 244 (Ky.1972). There, the court held that defendant was "doing business" in Kentucky, pointing out that

"it did manufacture merchandise which it placed on the consumer market in Kentucky via mail order and occasional visits of its representatives to Kentucky companies." Id. at 249.

Note that in Finley, unlike the case at bar, the foreign corporation's local involvement was heightened by the presence of agents within the state.

The only opinion cited by plaintiff in support of her allegation that defendant is doing business in Kentucky is Star Elkhorn Coal Co. v. Red Ash Pocahontas Coal Co., 102 F.Supp. 258 (E.D.Ky.1951). That case is of little practical value since its facts render it easily distinguishable. There,

"the defendant, a coal sales agency, had from one to four employees in Eastern Kentucky during the years 1947–48 for the purpose of purchasing, inspecting, accepting and rejecting coal at various tipples and mine offices. The first purchase of coal from the plaintiff was at its office in Kentucky in the amount of 20,000 tons. Other discussions were had, purchases made and necessary business matters attended to by agents of the defendant in the coal fields of Eastern Kentucky, in connection with the acquisition of many thousands of tons of coal by the defendant, continuously over a period of several months." Id. at 259.

The Kentucky nonresident jurisdiction statute has, on occasion, been construed by the federal courts. Etheridge v.

Grove Manufacturing Co., 415 F.2d 1338 (6th Cir. 1969), applied an earlier, more restrictive statutory provision. The personal involvement of the foreign corporation within the state was held sufficient to satisfy the "doing business" requirement:

"Grove had a salesman who called upon distributors in Kentucky, sold and shipped equipment into the State, and, on occasions, sent maintenance personnel into Kentucky to service equipment." Id. at 1339.

Irby v. All State Industries of North Carolina, 305 F.Supp. 772 (W.D.Ky. 1969), was an action brought by the guest of a Kentucky buyer of a swimming pool constructed by the New Jersey defendant corporation. The plaintiff's host had purchased the pool from a North Carolina retailer which through its parent company had acquired it from a subsidiary of defendant. The court ruled that, in view of the remoteness of the relationship with Kentucky, defendant could not be subjected to a local action; the manufacturer

"owns no property in Kentucky, is not incorporated in Kentucky, does not have its principal place of business or any other business in Kentucky, does not purchase, sell, or distribute its product in Kentucky, and has not consented to the jurisdiction of Kentucky courts." Id. at 774.

While Omega does occasionally sell its product locally, this activity is carried out by correspondence with independent merchants, and not through personal contact. Comparable situations were examined in two federal decisions: Tetco Metal Products, Inc. v. Langham, 387 F. 2d 721 (5th Cir. 1968), and Agrashell, Inc. v. Bernard Sirotta Co., 344 F.2d 583 (2nd Cir. 1965). In the former case, Tetco, the Illinois manufacturer of a defective water heater, was sued by an Alabama consumer who had purchased the heater from an independent local dealer. Tetco had no bank account, place of business, manufacturing plant, or property in Alabama, and employed no local agents. Its contacts with the forum

consisted solely of unsolicited orders from independent Alabama dealers followed by the shipment of merchandise to that state. The Fifth Circuit held that these actions were not of sufficient magnitude to warrant a finding of doing business.

Agrashell involved the interpretation of the New York "doing business" requirement. There, the defendant corporation negotiated and consummated contracts with New York residents by telephone and mail. In ruling that the foreign concern was not properly within the jurisdiction of the court, the opinion distinguished cases where the defendant's representatives are sent to the forum to solicit and negotiate contracts.

In spite of the above authority, this court remains unpersuaded that Omega is not "doing business" in Kentucky. Ostensibly, Omega's Kentucky involvement is very much the same as that found to be insufficient for jurisdiction in Tetco and Agrashell. In reading those cases, however, several factors are noted: (1) they were not based upon the Kentucky statute; (2) the Kentucky Court of Appeals might hold that Omega's conduct is within KRS 454.210, in accordance with its earlier statement that the quantity and nature of business required for jurisdiction is diminishing. Charles Zubik & Sons, Inc. v. Marine Sales & Service, 300 S.W.2d 35 (Ky.1957). In addition, the plaintiff alternatively relies upon subsections "2" and "3" of KRS 454.210(2)(a) to subject defendant to jurisdiction, and no authority examining the meaning of these provisions is cited. This court is accordingly hesitant to hold that Omega is not properly within the court's jurisdiction.

In any event, this court finds it unnecessary, in view of its holding on the motion for summary judgment, to reach a decision on this issue. For these reasons, defendant's motion to quash service of process must be overruled.

Omega has filed an alternative motion for summary judgment. While defendant's position might have been better stated in the form of a motion to dismiss for failure to state a claim upon which relief can be granted, it has been held that the elements of such a motion may constitute one of the grounds for summary judgment. Horwitz v. Food Town, Inc., 241 F.Supp. 1 (E.D.La.1965), aff'd 367 F.2d 584 (5th Cir. 1966).

This court is uncertain as to the precise theory of recovery advanced by plaintiff. In fairness to her, and in view of the prohibition against granting summary judgments lightly, Rogers v. Peabody Coal Co., 342 F.2d 749 (6th Cir. 1965), all the claims mentioned in plaintiff's amended complaint will be analyzed.

The following theories are either stated or implied by plaintiff: (a) Omega is in violation of the Gun Control Act of 1968, Chapter 44 of Title 18, U.S.C.; (b) Omega is liable for the injuries inflicted upon plaintiff based upon a theory of "strict liability"; (c) Omega was negligent in that it should have foreseen the criminal use of this revolver; (d) Omega breached its duty to protect others from criminal attack.

The Gun Control Act of 1968, Chapter 44 of Title 18, U.S.C., was drafted to restrict commerce in firearms to licensed dealers, manufacturers, and importers. Defendant has obviously complied with this Act, as well as the earlier Federal Firearms Act, 15 U.S.C. § 901 et seq., since the record includes copies of licenses issued to Omega for the years 1967 to 1973. In any event, a detailed examination of the provisions of the Gun Control Act of 1968 is unnecessary, as the shipment date of the weapon in question preceded the effective date of Chapter 44 of Title 18, U.S.C., by several months. Defendant's answers to plaintiff's interrogatories indicate that the pistol allegedly used to injure plaintiff was mailed to Kentucky on June 3, 1968, while the effective date of the Gun Control Act of 1968 was October 22, 1968.

Plaintiff also claims that this case is one which should be governed by the "strict liability" theory. In Reidinger v. Trans World Airlines, Inc., 329

F.Supp. 487 (E.D.Ky.1971), this court summarized the elements required for recovery in an action based upon this concept:

"A designer or manufacturer of a product may not be held liable for negligence unless there is proof that, at the time of the accident, a defect in that product existed which was the proximate cause of the harm." Id. at 490.

This court will not become involved with the classification of Omega as "manfacturer", "supplier", or "designer", since there are two rather obvious reasons why plaintiff cannot recover on the "strict liability" theory.

First, plaintiff has not mentioned product defectiveness, a necessary allegation in an action based upon this theory:

". . . . Strict liability requires proof of defect, and lack of such proof is fatal to recovery . . . a product is not defective and unreasonably dangerous if it is inherently, and obviously, dangerous . . ." 63 Am. Jur.2d, Products Liability, Section 129.

The Kentucky Court, in Dealers Transport Company, Inc. v. Battery Distributing Company, Inc., 402 S.W.2d 441 (Ky. 1966), indicated its alignment with Restatement, Torts 2d, Section 402A, which states:

"(1) One who sells any product in a *defective* condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property . . ." (Emphasis added.)

Second, Omega is not responsible for the consequences of the type occurring here. Plaintiff alleges that Omega should have reasonably foreseen and anticipated that the weapon in question would be used in the commission of a crime. The rule concerning foreseeability of a subsequent criminal act is stated in Prosser, Tort, 3d Edition, page 176:

"There is normally much less reason to anticipate acts on the part of others which are malicious and intentionally

damaging than those which are merely negligent; and this is all the more true where, as is usually the case, such acts are criminal. Under all ordinary and normal circumstances, in the absence of any reason to expect the contrary, the actor may reasonably proceed upon the assumption that others will obey the criminal law."

The improper use of a product after it has left the hands of the manufacturer was discussed in Ford Motor Company v. Atcher, 310 S.W.2d 510 (Ky.1958). That Court quoted the language in Restatement, Torts, Section 395, as expressing the Kentucky rule on this question:

"A manufacturer who fails to exercise reasonable care in the manufacture of a chattel which, unless carefully made, he should recognize as involving an unreasonable risk of causing substantial bodily harm to those who *lawfully* use it for a purpose for which it is manufactured and to those whom the supplier should expect to be in the vicinity of its probable use, is subject to liability for bodily harm caused to them by its *lawful* use in the manner and for a purpose for which it is manufactured." (Emphasis added.)

■ It is clear that the above authority erects no duty upon a manufacturer of a nondefective product to anticipate the various unlawful acts possible through the misuse of that item.

■ Plaintiff cites the cases gathered in 10 A.L.R.3d 619 as imposing a duty upon Omega to protect her against criminal attack. A thorough reading of this authority reveals that in every situation in which liability was found, a special relationship existed between plaintiff and defendant, such as bailor-bailee or master-servant.

It is obvious that none of the plaintiff's grounds for recovery are sufficient to support the action against the Omega Import Company. For the reasons noted above, this defendant's motion for summary judgment must be sustained.

An order will be entered overruling the motion by defendant, Omega Import Company, to quash service of process and sustaining the same defendant's motion for summary judgment.