James **HETHERTON** and Carol Hetherton, his wife, Plaintiffs,

v.

**SEARS, ROEBUCK AND CO.,** Defendant.

Civ. A. No. 77–84.

United States District Court, D. Delaware.

Jan. 27, 1978.

Carl A. Agostini, of Roeberg & Agostini, Wilmington, Del., for plaintiffs.

Arnold J. Bennett, (argued) Robert F. Maxwell, St. Davids, Pa., Howard M. Berg, Wilmington, Del., for defendant.

OPINION

CALEB M. WRIGHT, Senior District Judge.

James Hetherton, a Wilmington Police Officer, was shot on April 9, 1976 while he was working at an extra job as a guard. Hetherton's assailant, one Lloyd C. Fullman, Jr., shot Hetherton with a .22 caliber rifle. Both the rifle and ammunition were purchased by Fullman at a Sears, Roebuck & Company ("Sears") department store in Wilmington, Delaware on February 25, 1976. At the time Fullman purchased the rifle and ammunition, a Sears salesman, John Loughren, requested Fullman's Delaware driver's license for identification purposes and asked Fullman to fill out a federal Firearms Transaction Record (Form 4473). Although Fullman had been convicted of two felonies under Delaware law prior to the time of the sale, he indicated on Form 4473 that he had never been convicted of a felony.[1]

Hetherton and his wife have sued Sears in diversity claiming damages for personal injuries resulting from the shooting. The amended complaint states three theories of liability: (1) Sears failed to require at least two freeholders who were residents of New Castle County to positively identify Fullman before selling him a "deadly weapon", in violation of 24 *Del.C.* § 904;[2] (2) Sears sold a deadly weapon to a convicted felon without having "reasonable cause to believe" that the sale was not in violation of state law, as required under the Gun Control Act of 1968, 18 *U.S.C.* § 922(b)(2);[3] (3) Sears was negligent under common law because it failed to use reasonable caution in attempting to ascertain whether Fullman was prohibited from possessing a deadly weapon under 11 *Del.C.* § 1448.[4]

1. Fullman was convicted in January 1977 of knowingly making a false statement on the federal firearms form which he filled out in connection with the sale at issue in this case. *United States v. Lloyd C. Fullman, Jr.,* Criminal Action 76–132 (D.Del.1977).

2. Chapter 9 of Title 24 of the Delaware Code is entitled "Deadly Weapons Dealers". Section 904 of Title 24 provides as follows:

"Any person desiring to engage in the business described in this chapter shall keep and maintain in his place of business at all times a book which shall be furnished him by the State Tax Department. In such book he shall enter the date of the sale, the name and address of the person purchasing any deadly weapon, the number and kind of deadly weapon so purchased, the color of the person so purchasing the same, the apparent age of the purchaser, and the names and addresses of at least two freeholders resident in the county wherein the sale is made, who shall positively identify the purchaser before the sale can be made. No clerk, employee or other person associated with the seller shall act as one of the identifying freeholders. The book shall at all times be open for inspection by any judge, justice of the peace, police officer, constable or other peace officer of this state."

Section 901, the first section of Chapter 9, provides:

"No person shall sell or expose to sale, any pistol or revolver, or revolver or pistol cartridges, stiletto, steel or brass knuckles, or other deadly weapon made especially for the defense of one's person, without first having obtained a license therefor, which license shall be known as 'Special License to Sell Deadly Weapons.' No person licensed or unlicensed shall possess, sell, or offer for sale any switch blade knife."

3. 18 *U.S.C.* § 922(b)(2) provides as follows:

(b) It shall be unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector to sell or deliver—

\* \* \* \* \* \*

(2) any firearm or ammunition to any person in any State where the purchase or possession by such person of such firearm or ammunition would be in violation of any State law or any published ordinance applicable at the place of sale, delivery or other disposition, unless the licensee knows or has reasonable cause to believe that the purchase or possession would not be in violation of such State law or such published ordinance.

4. 11 *Del.C.* § 1448 provides in pertinent part:

Any person, having been convicted in this State or elsewhere of a felony or a crime of violence involving bodily injury to another, whether or not armed with, or having in his

Sears has moved for summary judgment on all three of plaintiffs' theories of liability. The plaintiffs have moved for summary judgment based on alleged violations by Sears of 24 *Del.C.* § 904 and 18 *U.S.C.* § 922(b)(2), but not on the common law count.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate when "there is no genuine issue as to any material fact and . . the moving party is entitled to a judgment as a matter of law". Summary judgment is appropriate in this case, since the basic facts concerning the circumstances surrounding the sale to Fullman are undisputed, and since the only questions raised by the parties involve matters of law. For the reasons discussed below, the Court grants summary judgment for Sears on all three theories of liability.

## I. LIABILITY UNDER 24 DEL.C. § 904

Chapter 9 of Title 24 of the Delaware Code, entitled "Deadly Weapons Dealers", sets out a licensing scheme and provides, *inter alia;* that a dealer must record certain information at the time of sale of any "deadly weapon". One item of information which the dealer must record is the "names and addresses of at least two freeholders resident in the county wherein the sale is made, who shall positively identify the pur-

chaser before the sale can be made". 24 *Del.C.* § 904. It is undisputed that Sears did not request or record such information in connection with the sale of the .22 caliber rifle and ammunition to Fullman. Plaintiffs allege that the failure to require identification by two freeholders in connection with the sale of the ammunition was a violation of § 904 which constitutes negligence per se on the part of Sears.[5]

Sears objects that it did not violate the statute, since the ammunition which Fullman purchased is not a "deadly weapon" under 24 *Del.C.* § 904. However, Section 901 of Title 24 spells out licensing requirements for the sale of ". . . revolver or pistol cartridges . . . or other deadly weapons made especially for the defense of one's person . . . ." This language and the title of the chapter indicate that the legislature intended that revolver or pistol cartridges fall within the classification of "deadly weapons" for the purposes of Chapter 9. There is no indication in the statute that the legislature did not intend that revolver or pistol cartridges be considered "deadly weapons" for the purposes of the recording requirements of § 904, as well as the licensing requirements of § 901.[6]

The ammunition which Fullman purchased was identified on the package as "Sears .22 Long Rifle Xtra-Range Hollow Point Cartridges". However, plaintiffs

---

possession any weapon during the commission of such felony or crime of violence . . who purchases, owns, possesses or controls any deadly weapon is guilty of a class E felony.

11 *Del.C.* § 222 provides:
When used in this Criminal Code:

 \* \* \* \* \* \*

(5) "Deadly weapon" includes any weapon from which a shot may be discharged, a knife of any sort (other than an ordinary pocket-knife carried in a closed position), switch-blade knife, billy, blackjack, bludgeon, metal knuckles, slingshot, razor, bicycle chain or ice pick.

 \* \* \* \* \* \*

**5.** The parties apparently agree that a .22 caliber rifle is not a "deadly weapon" under Chapter 9 of Title 24 of the Delaware Code. Rifles are not listed as one of the items for the sale of which a dealer must be licensed. *See* 24 *Del.C.* § 901.

**6.** The Court has been unable to locate any cases or administrative decisions interpreting 24 *Del.C.* § 904. Sears argues that the legislature did not intend to include ammunition as a "deadly weapon" under 24 *Del.C.* § 904, since ammunition is not considered to be a "weapon" under most dictionary definitions, since it would be impractical to consider ammunition to be a "deadly weapon" under other Delaware statutes which use the same term, and since cartridges do not have a serial number which the dealer could record. However, these arguments are contradicted by the language of the statute. There is no reason that the legislature may not choose to include ammunition in the regulatory scheme of Chapter 9, regardless of whether it is considered to be a "deadly weapon" under other statutes. *See, e. g.,* 11 *Del.C.* § 222(5), *supra* at Footnote 4. However, in light of the discussion beginning *infra* at page 298, it is unnecessary for the Court to decide this matter of statutory interpretation.

point out that .22 caliber rifle cartridges of this variety can be used in many types of pistols and revolvers.[7] Thus, although the ammunition which Fullman purchased was labeled as rifle cartridges, it can also be described as "revolver or pistol cartridges". It is unlikely that the legislature intended to permit dealers to evade either the licensing requirements of § 901 or the recording requirements of § 904 merely by selling a product under one label rather than another.

Nevertheless, in light of the discussion *infra*, it is unnecessary for the purposes of this case to decide whether the Delaware legislature intended that the ammunition sold to Fullman be defined as a "deadly weapon" under 24 *Del.C.* § 904. The Court may assume for purposes of decision that the ammunition was a "deadly weapon" under § 904 and that Sears violated the statute.

 Under Delaware law, conduct in violation of a statute enacted for the safety of others constitutes negligence per se. *Sammons v. Ridgeway*, 293 A.2d 547, 549 (Del.1972); *Schwartzman v. Weiner*, 319 A.2d 48, 54 (Del.Super.1974); *Nance v. Rees*, 2 Storey 533, 52 Del. 533, 161 A.2d 795, 797 (Del.Super.1960); *Wealth v. Renai*, 10 Terry 289, 49 Del. 289, 114 A.2d 809, 810–811 (Del.Super.1955).[8] However, such conduct alone will not result in liability on the part of a defendant. In order for the negligence to be actionable, there must be a causal connection between the violation of the statute and the injuries of which a plaintiff complains. *See, Wealth, supra,*

114 A.2d at 811; *Warren v. Anchor Motor Freight*, 7 Terry 188, 46 Del. 188, 81 A.2d 321 (Del.Super.1951). That causal connection is absent in the present case. Sears' salesman accurately identified Fullman by examining his driver's license. Further identification by two resident freeholders, in compliance with 24 *Del.C.* § 904, would not have influenced his decision to sell the ammunition to Fullman.

Plaintiffs argue that the legislature provided the requirement of identification by two resident freeholders so that two presumably responsible citizens would attest to the character of a purchaser. Plaintiffs argue that the legislature acted on the assumption that it would be very difficult for someone like Fullman to find two freeholders who would be willing to identify him when he purchased ammunition, knowing that he was a convicted felon. Freeholders who did not know Fullman well enough to know that he had a criminal record would presumably be unwilling to identify him.

However, the Court is unable to conclude that the legislature intended the two freeholder identification requirement to be for any purpose beyond that of accurately verifying the identity of the purchaser. The plain words of the statute require only that the resident freeholders "positively identify" the purchaser. In the absence of legislative history, the Court is unwilling to speculate about any further purpose behind the statute.[9]

Normally matters of proximate cause are for the jury to decide. However, in the present case, there is no dispute as to the

---

7. Affidavit of William D. Stephey, firearms and ammunition identification expert, July 9, 1977, contained in Appendix to Plaintiffs' Answering Brief Denying Defendant's Motion for Summary Judgment and Plaintiffs' Opening Brief in Support of Their Motion for Summary Judgment. Stephey's affidavit states that the type of cartridges at issue in this case "may be used for hundreds of various pistols" and "are perhaps the most popular cartridges due to the ability to interchange said cartridges with various pistols and revolvers."

8. While the legislature did not specify the purposes the identification requirement in § 904 was meant to serve, it is at least arguable that

the statutory scheme for licensing and regulating deadly weapons dealers was enacted partly for the safety of others.

9. Furthermore, had the Delaware legislature intended that a seller obtain information about a purchaser's character or background, it was capable of enacting more specific measures than the two freeholder identification requirement. The bare requirement of "positive identification" in 24 *Del.C.* § 904 contrasts with the extensive requirements for establishing moral character in connection with obtaining a license to carry concealed deadly weapons, found in 11 *Del.C.* § 1441.

facts or the inferences to be drawn from those facts, but only as to the interpretation of the statute. Thus, the matter is appropriate for decision on a motion for summary judgment. The Court concludes that Sears cannot be held liable to Hetherton on the basis of a violation of 24 *Del.C.* § 904, because of the lack of any causal connection between Sears' failure to require the type of identification specified by the statute and Hetherton's injuries.

## II. LIABILITY UNDER 18 U.S.C. § 922(b)(2)

The Gun Control Act of 1968 provides that it is unlawful for a licensed dealer to sell a firearm or ammunition unless he has "reasonable cause to believe" that the purchase would not be in violation of state law. 18 *U.S.C.* § 922(b)(2).[10] A Treasury Department regulation issued under the Act provides certain procedures which a licensed dealer must observe and provides that a licensed dealer shall sign a federal firearms form (Form 4473) "if satisfied that the transferee is lawfully entitled to receive the firearm". 27 C.F.R. § 178.124(c).[11]

Sears alleges that it complied fully with the procedures prescribed under 27 *C.F.R.* § 178.124(c). Loughren, the salesman, required Fullman's driver's license for identification purposes and required him to fill out a Form 4473. Loughren compared Full-

man's appearance with the description on the driver's license. He noted that Fullman had filled out Form 4473 completely and had signed the form. He noted that none of Fullman's answers to the questions on the form indicated that he was disqualified from making a firearms purchase. According to Loughren, at the time of the sale Fullman made no unusual statements nor gave any indication that he was planning to use the rifle for illegal purposes.[12]

Sears further alleges that compliance with the regulations places a dealer in compliance with the statute itself. Sears has submitted an affidavit from Richard A. Mascolo, Chief of the Technical Services Branch of the Mid-Atlantic Region of the Bureau of Alcohol, Tobacco and Firearms, United States Department of the Treasury (Exhibit D in Appendix to Defendant's Reply Brief . ⸜ .), stating that a seller who has identified a purchaser by means of a driver's license and who has received a Form 4473 executed and signed by the purchaser, with certain questions answered in the negative, may sign the form as evidence that he is satisfied from the identification, answers, and certification that the purchaser is lawfully entitled to purchase the firearm. Mr. Mascolo's affidavit states that there is no further duty on the seller to verify the information certified by the purchaser.

---

10. At the time of the sale to Fullman, Sears was a licensed dealer in firearms as defined under 18 *U.S.C.* §§ 921 *et seq. See*, Affidavit of Kenneth Golder, June 24, 1977, contained in Appendix to Defendant's Brief in Support of Motion for Summary Judgment. The state law which plaintiffs allege was violated by Fullman's purchase is 11 *Del.C.* § 1448. *See*, Footnote 4, *supra*, for text.

11. 27 *C.F.R.* § 178.124(c) provides as follows:
 "(c) Prior to making an over-the-counter transfer of a firearm to a nonlicensee who is a resident of the State in which the licensee maintains his business or collection premises, the licensed importer, licensed manufacturer, licensed dealer, or licensed collector so transferring the firearm shall obtain a Form 4473 from the transferee showing the name, address, date and place of birth, height, weight, and race of the transferee, and certification by the transferee that he is not prohibited by the Act or Title VII of the Omnibus Crime

Control and Safe Streets Act of 1968 (82 Stat. 236; 18 U.S.C. Appendix) from receiving a firearm in interstate or foreign commerce. The licensee shall identify the firearm to be transferred by listing in the Form 4473 the name of the manufacturer, the name of the importer (if any), the type, model, caliber or gauge, and the serial number of the firearm. Before transferring the firearm described in the Form 4473, the licensee (1) shall cause the transferee to identify himself in any manner customarily used in commercial transactions (e. g., a driver's license), and shall note on the form the method used, and (2) if satisfied that the transferee is lawfully entitled to receive the firearm, shall sign and date the form."

12. *See*, Affidavit of John Alan Loughren, June 12, 1977, Exhibit C in Appendix to Defendant's Brief in Support of Motion for Summary Judgment.

Plaintiffs argue that a dealer cannot form a "reasonable cause to believe" that a purchase would not be in violation of state law merely by identifying a purchaser by his driver's license and examining the Form 4473 which he has filled out. Plaintiffs urge that 18 *U.S.C.* § 922(b)(2) requires a dealer to form an affirmative independent judgment that a purchase would not violate state law. Plaintiffs argue that mere identification of a purchaser and acceptance of his statements at face value are not reasonable grounds for forming such a judgment when the seller has "never seen, known or heard of" the purchaser before. (*See,* Affidavit of John Alan Loughren, June 12, 1977, Exhibit C in Appendix to Defendant's Brief in Support of its Motion for Summary Judgment).

The Court has found very little case law clarifying the obligations of a dealer under 18 *U.S.C.* § 922(b)(2).[13] Unfortunately there is very little indication in the wording of the statute or in the legislative history of what information a dealer would need in order to have a "reasonable cause to believe" that a purchase would not be in violation of state law.[14] However, the wording of 18 *U.S.C.* § 922(b)(2) does appear to require an affirmative decision by a dealer as a prerequisite to a sale.[15] A dealer must presumably have some information on which to ground his decision about a purchase in order to comply with 18 *U.S.C.* § 922(b)(2).

The United States Department of the Treasury has promulgated regulations designed to give dealers some information about a purchaser's identity and background through inspection of a driver's license and a purchaser's Form 4473 responses.[16] The regulations do not prescribe any procedure for verifying the information received from the purchaser. While Mr. Mascolo's affidavit does not have the status of an official administrative interpretation, it suggests that Treasury Department personnel do not believe that dealers have any further obligation than to follow the specific steps set out in the regulations.

■ The Court concludes that compliance with the specific procedures contained in the Treasury Department regulations is sufficient to constitute dealer compliance with 18 *U.S.C.* § 922(b)(2). Congress was free to leave some of the mechanics of the statutory scheme for firearms regulation for development by administrative regulation. The Treasury Department conceivably could have developed a wide variety of procedures under the statute, including procedures for verification of information given by purchasers. However, it chose to require only identification and execution of Form 4473. In light of the broad statutory language, the lack of legislative history indicating that Congress had any specific procedures in mind when it enacted the statute, and the lack of other procedures which are obviously more "reasonable" or suitable,[17] the Court concludes that the regula-

13. Sears cites *Franco v. Bunyard,* 547 S.W.2d 91 (Ark.), *cert. denied,* —— U.S. ——, 98 S.Ct. 123, 54 L.Ed.2d 96 (1977), for the proposition that adherence to the procedures required by Treasury regulations constitutes compliance with 18 *U.S.C.* § 922(b)(2). However, *Franco* involved a seller who had totally failed to observe the regulations. The court merely noted that if the law had been obeyed, the purchaser would not have obtained the gun and used it to shoot innocent persons. The court did not consider the question of whether anything more was required of a seller than compliance with the procedures set out in the regulations.

14. It is instructive to note that, in contrast to the general language of 18 *U.S.C.* § 922(b)(2), Congress explicitly required certain verification procedures (including notification of a local law enforcement officer) and delays in connection

with mail order sales of firearms. See, 18 *U.S.C.* § 922(c). Congress could have specified such measures in connection with over-the-counter sales of rifles, but it declined to do so.

15. The wording of 18 *U.S.C.* § 922(b)(2) contrasts with the wording of other sections of the statute, which require only that a dealer not make a sale if he has reasonable cause to believe that the purchaser belongs to certain enumerated classes. *See, e. g.,* 18 *U.S.C.* §§ 922(b)(1), 922(b)(3), and 922(d).

16. *See,* Footnote 11, *supra.*

17. Plaintiffs argue that in the present case Sears could have discovered that Fullman was a convicted felon by making one phone call to the Wilmington Police Department. *See,* Foot-

tions reflect the legislative intent underlying the statute. Compliance with the procedures prescribed in the regulations constitutes sufficient proof that a dealer has "reasonable cause to believe" that a purchase is not in violation of state law, at least when he is unaware of other circumstances which would detract from that conclusion.[18] Since Sears complied with the procedures set out in the regulations, and since it was unaware of any negative information concerning Fullman, it did not violate 18 *U.S.C.* § 922(b)(2). Summary judgment will be granted for Sears on this claim.[19]

## III. LIABILITY UNDER COMMON LAW

Plaintiffs' third claim is that Sears should be held liable under common law negligence principles because of its failure to attempt to ascertain whether Fullman was violating Delaware law by purchasing the rifle.[20] Plaintiffs concede that they have found no cases which hold that a vendor may be liable at common law for the negligent sale of a firearm to a convicted felon. However, they urge that a reasonable person standard should be applied to determine whether Sears' conduct in this case was negligent. According to plaintiffs, Sears should have foreseen that some convicted felons would lie in order to obtain a firearm. Plaintiffs argue that Sears could

have discovered that Fullman was a convicted felon merely by making one phone call to the Wilmington Police Station. They argue that a jury could find that when human life was at stake a reasonable person would have made at least that small effort to verify the truthfulness of Fullman's answers.

Sears suggests that *Bennet v. Cincinnati Checker Cab Co., Inc.*, 353 F.Supp. 1206 (E.D.Ky.1973), is dispositive of this case. In *Bennet* the plaintiff, who had been shot by an ex-convict, sued Omega, the importer of the revolver used in the shooting. Omega had mailed the revolver to a local dealer. Plaintiff alleged, *inter alia*, that Omega was negligent in that it should have foreseen the criminal use of the revolver, and that Omega breached its duty to protect others from criminal attack. The court, applying Kentucky law, granted summary judgment for Omega. The court stated that there is no duty of a *manufacturer* of a nondefective product to anticipate unlawful acts possible through the misuse of an item. In addition, the court concluded that Omega had no duty to protect the plaintiff against a criminal attack.

Sears urges that *Bennet* stands for the proposition that a vendor of firearms may not be held liable at common law for subsequent criminal acts committed by a purchaser. However, *Bennet* dealt with the liability of an importer, not an immediate

note 26 *infra*. However, it is unclear why this step is so much more effective and obvious than any of the other measures Sears could conceivably have taken. *See,* Footnote 27 *infra*. The situation might be different if Congress had provided for the establishment of a national criminal information network to which firearms dealers were given access.

**18.** Had Congress intended to impose on dealers some sort of undefined duty to investigate a purchaser's background or verify the truthfulness of his statements, above and beyond what is required in administrative regulations, there might be problems of vagueness or reasonable notice to dealers. A criminal statute must give a person of ordinary intelligence fair notice of the forbidden conduct. *See, e. g., United States v. Harriss,* 347 U.S. 612, 617, 74 S.Ct. 808, 98 L.Ed. 989 (1954).

**19.** In light of the Court's conclusion that Sears did not violate 18 *U.S.C.* § 922(b)(2), it is unnecessary to determine whether such a violation can create civil liability. The possibility was suggested in *Bennet v. Cincinnati Checker Cab Co., Inc.,* 353 F.Supp. 1206, 1209 (E.D.Ky. 1973), but the issue was not decided, since the firearms sale at issue in that case was completed prior to the effective date of the Gun Control Act of 1968. In *Franco v. Bunyard,* 547 S.W.2d 91 (Ark.), *cert. denied,* —— U.S. ——, 98 S.Ct. 123, 54 L.Ed.2d 96 (1977), the Arkansas Supreme Court assumed that civil liability could result from a dealer's violation of the Gun Control Act and regulations.

**20.** The Delaware law which plaintiffs claim that Fullman violated is 11 *Del.C.* § 1448, which forbids a convicted felon from purchasing a deadly weapon. *See,* Footnote 4, *supra,* for text.

seller, and it is thus not dispositive of the present case.

The plaintiffs claim that Sears did not act reasonably, because it did not investigate the truthfulness of Fullman's answers on Form 4473. The threshold question which the Court must address is the standard of care, or duty, required of a firearms dealer.[21] There can be no negligence unless a duty existed on Sears' part. *See, e. g., State, to use of Henderson v. Clark*, 2 Terry 246, 41 Del. 246, 20 A.2d 127, 131 (1941); *Boyce v. United States Steel Corp.*, 446 Pa. 226, 285 A.2d 459, 461 (1971); *Neal v. Shields*, 166 Conn. 3, 347 A.2d 102, 107 (1974).

In close or doubtful cases, the question of what standard of care should be applied is for the jury. The decision as to what a reasonably prudent person would have done under the circumstances is to be determined based on the peculiar facts of each case. *See, Delmarva Power & Light v. Stout*, No. 333, 1975 (Del., November 22, 1977); *Robelin Piano Co. v. DiFonzo*, 3 Storey 346, 53 Del. 346, 169 A.2d 240, 244–245 (1961). However, in other cases the standard of care is fixed by judicial decision or legislative enactment. *See, Stout, supra; Yetter v. Rajeski*, 364 F.Supp. 105, 108 (D.N.J.1973). It is thus appropriate to examine common law principles to determine whether the courts have delineated a standard of care which is applicable to this case.

In some instances, courts have imposed common law liability for injuries to another on a person who has entrusted an item to a third person whom he knows is likely to use it in a dangerous manner so as to injure others. Section 308 of the *Restatement (Second) of Torts* provides:

> It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.

Section 390 of the *Restatement (Second) of Torts* provides:

> One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

Both of these *Restatement* sections provide that in order for liability to exist, the controller or supplier of an item must know or have reason to know (or "should know") that the third person is likely to misuse the item. The comments to the sections do not suggest that the controller or supplier has any duty to make an investigation of the background of the person to whom he entrusts the item.[22]

---

21. The question of liability for a third party's act is more properly framed in terms of the initial existence of a duty of care, rather than the existence of proximate cause. *See, Prosser on Torts* § 44 at 283 (1971); 57 *Am.Jur.2d* § 173 (1971), and cases cited therein. Degree of foreseeability, or knowledge of the harm, is central to the issues of both duty and causation. *Compare, Restatement (Second) of Torts* §§ 308, 390, and 401, which define the scope of standards of care, with *Restatement (Second) of Torts* § 448, which deals with whether an intervening criminal act breaks a chain of causation. However, the question of whether Sears had a duty to investigate the truthfulness of Fullman's statements logically precedes the question of whether its failure to do so caused Hetherton's injuries.

22. In fact, Comment (c) to Section 308 suggests that one: "who uses a third person to accomplish his own ends is required to take greater pains to ascertain his fitness than where he permits a third person to use a thing under his control for the third person's own purposes. In the first case the actor's knowledge of the previous actions of a third person might be sufficient to make it negligent for the actor to use such person as an instrumentality to accomplish his own ends, although it might not be sufficient to make it improper for him to entrust a thing to such person for his own use." In this case, Sears entrusted the rifle and ammunition to Fullman for his own use.

The cases which deal with negligent entrustment of an item hold that liability may be imposed only if a supplier knows or has reason to know that the person to whom he entrusts the item is likely to misuse it. In *Pepper v. Hoffecker*, 192 A.2d 213 (Del.Super.1963), a plaintiff who had been shot by a 17-year old minor claimed that a defendant, Moore, was negligent in that he entrusted a revolver to the minor and another under circumstances in which he knew or should have known that the minor was of insufficient age and experience and in that he had not inquired how the borrowers intended to use the revolver. The court cited Section 308 of the *Restatement of Torts* and noted that Moore knew that the individuals to whom he loaned the pistol were familiar with and experienced in the use of firearms. The court found as a fact that when Moore loaned his revolver he did not know and had no reason to know that the borrowers were likely to use the revolver in a manner which was dangerous to others. Thus, Moore was held to be not liable for the injuries to the third person. The court made no mention of any duty on the part of Moore to inquire how the borrowers intended to use the revolver.

In negligent entrustment cases from jurisdictions other than Delaware, the courts likewise have referred to knowledge or reason to know as a necessary element of negligence. *See, e. g. , Sikora v. Wade*, 135 N.J.Super. 62, 342 A.2d 580, 582 (1975) (unreasonable as a matter of public policy to impose a duty of inquiry on a donor or seller of an automobile when he has no actual knowledge as to the driving ability of the borrower or purchaser); *Snowhite v. State*, 243 Md. 291, 221 A.2d 342, 353–355 (1966) (whether defendant had either actual or constructive notice that employee was unfit as a driver was an issue); *Sabatinelli v. Butler*, 363 Mass. 565, 296 N.E.2d 190, 193 (1973) (father who permitted 20-year old son to have gun cannot be held negligent when there was no evidence that father knew or should have known of his son's propensity for misuse of guns or other weapons; father's knowledge of son's psychiatric and drinking problems was not suf-

ficient evidence to submit issue of negligence to jury); *General Valet Service, Inc. v. Curley*, 16 Md.App. 453, 298 A.2d 190, 198 (1973) (relevant evidence would be that which showed that defendant knew, or from facts known to it should have known, that its employee, because of a habit of incompetent driving, was likely to use a van in a dangerous manner); *Corey v. Kaufman & Chernick*, 70 R.I. 27, 36 A.2d 103, 195 (1944) (seller of gun who knew it would be given to 15-year old son of purchaser was not liable for injuries caused when son negligently fired gun, where no statement was made to seller about boy's experience with firearms and salesman had no knowledge or notice as to boy's experience with firearms). *Cf., Willigan v. Sears, Roebuck & Co.*, 33 A.D.2d 1033, 308 N.Y.S.2d 74 (1970), aff'd., 28 N.Y.2d 680, 320 N.Y.S.2d 737, 269 N.E.2d 399 (1971) (in absence of any claim that rifle was defective, when sale was not prohibited by statute seller could not be held liable for injury to third person resulting from negligent or improper use of rifle by 17-year old purchaser; no discussion of any duty to investigate). The courts do not appear to distinguish cases in which a supplier is not personally acquainted with the person to whom he entrusts the item.

Those who possess dangerous instrumentalities, such as firearms, have a duty higher than that of ordinary care. *See, e. g., Kuhns v. Brugger*, 390 Pa. 331, 135 A.2d 395, 403 (1957); *Stoelting v. Hauck*, 56 N.J. Super. 386, 153 A.2d 339, 348 (1959). However, even this higher duty of care is imposed only when a person has knowledge or reason to know of the likelihood of misuse by a third party. In *Kuhns, supra*, the defendant, Bach, kept a loaded pistol in a unlocked drawer which was accessible to young children. The court, citing the *Restatement of the Law of Torts*, § 308, stated:

The duty imposed upon Bach encompassed all those persons who might suffer harm or injury from the pistol's discharge and included the pistol's use not only by Bach but its use by a third person if Bach knew or had reason to know that such

person was likely to use the pistol in such a manner as to create "an unreasonable risk of harm to others". (footnote omitted).

*Kuhns, supra,* 135 A.2d at 403.

It is undisputed that Sears had no actual knowledge of Fullman's criminal record.[23] The only information which Sears possessed was Fullman's denial on Form 4473 of any prior felony conviction. No other factors, such as Fullman's conversation or demeanor, gave Sears reason to know that he was lying in response to a question on Form 4473.[24]

■■ Nevertheless, plaintiffs argue that Sears should have foreseen that some convicted felons would lie in order to obtain guns with which to commit crimes. Plaintiffs also argue that Sears should have foreseen Fullman's criminal act because of Federal Bureau of Investigation statistics which show that murder and crimes with deadly weapons are increasing. However, a duty of reasonable care is founded on probabilities of a situation, not on mere possibility. *See, Jelinek v. Sotak,* 9 N.J. 19, 86 A.2d 684, 686 (1952). The Court concludes that the likelihood that not only was Fullman a convicted felon, but also that he would lie on Form 4473, and that a convicted felon would use the rifle in a dangerous manner was not so great that Sears had "reason to know" that Fullman would mis-

use the rifle. In the absence of some positive indication that Fullman had lied on Form 4473 or that he was likely to misuse the rifle, this Court believes that the Delaware courts would hold that Sears did not have a duty to investigate Fullman's background above and beyond the procedures required by statute.

Plaintiffs urge that this Court expand common law principles to recognize a duty of investigation on the part of a firearms seller, at least to the extent of allowing a jury to decide whether Sears breached its duty of reasonable care in failing to investigate Fullman's background. However, the Court is reluctant to do so for several reasons. The Delaware courts have given no indication that they would recognize a duty to investigate in such a case. Furthermore, both the state and federal legislatures have adopted comprehensive legislative schemes designed to regulate the sale of firearms. This Court feels some reluctance to create new standards of conduct for sellers when legislators have declined to incorporate such standards into the statutory schemes. Finally, it is difficult to define the limits of a possible duty to investigate on the part of firearms sellers.[25] Plaintiffs urge that they would expect a seller only to take steps which are "reasonable" in light of the possible risk to human life.[26] However, they do

23. The present case is thus distinguishable from *Semeniuk v. Chentis,* 1 Ill.App.2d 508, 117 N.E.2d 883 (1954), cited by plaintiffs. In *Semeniuk,* the court found that the complaint stated a cause of action against a seller who had *actual knowledge* that an air rifle was being purchased for use by a 7-year old who lacked discretion and knowledge of the dangerous consequences of discharging air rifles.

24. *See,* Paragraph 8 of Affidavit of John Alan Loughren, June 12, 1977, Exhibit C in Appendix to Defendant's Brief in Support of Motion for Summary Judgment.

25. In considering whether to recognize a duty of care, the Court should consider the fairness of imposing such a duty. *See Yetter v. Rajeski, supra,* 364 F.Supp. at 108. In *Yetter,* the court concluded that it would be unfair to impose on manufacturers a duty to design automobiles to protect against certain collision injuries, given the limitless variety and conditions under which automobile collisions occur. The court

stated that without legislatively imposed objective standards defining the design responsibilities of automobile manufacturers, the imposition of such a duty would be unfair. This Court believes that similar reasoning can be applied to the duty of a firearms dealer in the present case.

26. Plaintiffs urge that Sears could have discovered that Fullman was a convicted felon by making one phone call to the Wilmington Police Department. Plaintiffs have submitted an affidavit of Nicholas M. Valiante, Inspector with the Wilmington Police Department, July 8, 1977, contained in Appendix to Plaintiffs' Answering Brief. . . . Valiante states in his affidavit that had Sears called the Wilmington Police Department to determine whether Fullman was eligible under Delaware law to possess a deadly weapon, it would have been advised that Fullman was prohibited from possessing or purchasing a deadly weapon. Valiante states that this determination would have

not suggest any way to define the amount of effort which would be reasonable.[27]

In light of the silence of the Delaware courts, the activity of the state and federal legislatures in the gun control area, and the difficulty of defining a workable standard, the Court concludes that it would be unwise to extend the common law to recognize the possibility of a duty on the part of a firearms dealer to investigate the truthfulness of a purchaser's statements, absent some knowledge or reason to know that the purchaser is likely to misuse the firearm. Since there is no dispute as to the facts, and since the Court has determined that the duty of care is a matter of law in this case, summary judgment is therefore appropriate.

Summary judgment will be granted for the defendant on all theories of liability alleged by plaintiffs.

Submit Order and Judgment.

been made by checking the Records Division at the Wilmington Police Department. Valiante gives no indication of how long the check would take nor whether this service would be rendered to all firearms dealers who requested such determinations. Plaintiffs also urge that Sears could have discovered whether Fullman had been convicted of any felonies in the Superior Court in and for New Castle County by calling the local Board of Elections or by checking criminal records at the Prothonotary's Office.

**27.** The possible sources of information which a seller might check are numerous, since a purchaser may be disqualified from owning a gun

for other reasons than for being convicted of a felony under state law. The types of purchasers to whom dealers are forbidden to sell firearms under state and federal law also include those who are convicted of felonies under federal law, drug addicts or users, illegal aliens, those under indictment for a felony, those who have been committed to a mental institution, those who have been dishonorably discharged from the Armed Forces, and fugitives from justice. *See,* 18 *U.S.C.* § 922(d) and 11 *Del.C.* § 1448. It is unclear how many sources plaintiffs would require a seller to check, or how much time and effort would be "reasonable".