Jo Anne FRANCO, Administratrix, et al .
*v.* Marion A. BUNYARD et al

76-176                                           547 S.W. 2d 91

Opinion delivered February 28, 1977
(In Banc)
[Rehearing denied March 28, 1977.]

*McMath, Leatherman & Woods* and *John Lisle,* for appellants.

*Putman, Davis & Bassett; Kelley & Luffman;* and *Wayne Harris,* of *Warner and Smith,* for appellees.

GEORGE ROSE SMITH, Justice. Early in June, 1971, Daniel Lon Graham, serving a life sentence for kidnaping, escaped from the state penitentiary. Late in the afternoon of June 17 he bought a secondhand pistol at Bunyard Supply Company, Inc., in the city of Rogers. The seller assertedly violated a federal statute and federal regulations in making the sale. On the next day Graham robbed a grocery store in Springdale, taking three young employees as hostages. In a nearby wooded area Graham used the gun to murder two of the young men and wound the third.

This action for the wrongful deaths and personal injuries was brought by the appellants against Bunyard Supply, against Marion A. Bunyard, its president, manager, and principal stockholder, and against the company's national affiliate, Western Auto Supply Company. Upon the basis of extensive discovery depositions and similar proof, the defendants moved for summary judgment on the ground that there was no genuine issue as to any material fact. This appeal is from a judgment granting the motion. The trial judge reasoned that Graham's criminal use of the gun was an intervening efficient cause not forseeable by the seller.

The federal gun control law and regulations were examined by the Supreme Court in *Huddleston* v. *United States,* 415 U.S. 814 (1974). As stated in that opinion, Congress was concerned with the widespread traffic in firearms and the ease with which they could be obtained by criminals and others not legally entitled to possess them. The court noted that the principal agent in the scheme of federal enforcement

of the law is the licensed dealer. He is required to keep records of [acquisition and] disposition and is criminally liable for disposing of a weapon contrary to the Act. Information drawn from the records kept by licensed dealers is a prime guarantee of the Act's effectiveness in keeping lethal weapons out of the hands of criminals.

The regulations issued under the Act are, in our opinion, the real key to its enforcement. The regulations require the licensed dealer, *prior* to making an over-the-counter delivery of a firearm to a purchaser, to complete Form 4473, the Firearms Transaction Record. That record must show the buyer's name, address, date and place of birth, height, weight, and race, and must include his signed certification that he has not been convicted of a crime punishable by imprisonment for more than one year and that he is not a fugitive from justice. The seller, *before* transferring the gun, must require the buyer to identify himself in any manner customarily used in commercial transactions, as by a driver's license. Form 4473 requires the number on the identification, such as the driver's license number, to be entered on the form.

According to the proof as a whole, and especially the affidavit of Howard McDaniel, the Bunyard clerk who made the sale, there was not even a token compliance with the law. Graham entered the store an hour or so before its 5:30 closing time. He first negotiated for the purchase of a clothes washer and drier (to be delivered the next morning, to a fictitious address), evidently as a ruse for obtaining a pistol. He then inquired about buying a used gun, to protect his chickens against dogs. He had no wallet, no money, no driver's license, no identification of any kind. Even so, after giving a worthless check for more than $400 for the washer-drier and the gun, he was allowed to leave the store with the pistol without even signing Form 4473, as required by the regulations. According to McDaniel, that form was not filled out until the next day, after it was learned that the store had been duped. There were, of course, omissions in the form as filled out, such as Graham's driver's license number. Again according to McDaniel, he forged the name that Graham had given (Bill Shaw). Marion Bunyard signed the required certification that "it is my belief that it is not unlawful for me to sell . . .

the firearm" to the purchaser.

We have no doubt that upon the issue raised by the motion for summary judgment and argued here, the proof presents questions of fact as to the liability of Bunyard Supply. (The separate liability of Marion Bunyard is not argued.) The violation of a statute or valid regulation is ordinarily evidence of negligence. *Bussell* v. *Missouri Pac. R.R.*, 237 Ark. 812, 376 S.W. 2d 545 (1964); AMI Civil 2d, 601 (1974). On the issue of proximate cause, it is enough to point out that the tragedies could not have occurred as they did if the federal rules had been obeyed. That is, Graham had no means of identification — an essential prequisite to the purchase of a gun. This is not, as the appellees argue, a mere matter of record keeping. Form 4473 required the seller to obtain and record Graham's identification *before* handing over the gun. Graham had no identification. Thus, had the law been obeyed, he could not have obtained possession of the gun and could not have used it to shoot innocent men the next day. On the issue of foreseeability, we need say only that the very purpose of the law is to keep pistols out of the hands of such persons as Graham, who was both a convicted criminal and a fugitive from justice. It certainly cannot be said that his use of the gun in such a way as to injure others was not foreseeable. Of course it is not required that the precise sequence of events leading to the injury be foreseeable. *Helena Gas Co.* v. *Rogers*, 104 Ark. 59, 147 S.W. 473 (1912).

There is, however, no proof of liability on the part of Western Auto Supply Company. It is a national concern having company-owned and home-owned stores throughout the country. Bunyard Supply did business as Western Auto Supply, but it was home-owned and so identified to the public. In the franchise contract Bunyard Supply reserved to itself the "ownership, management, and control" of the store. The national chain agreed to sell its various brands of merchandise to the local store, but the vital power of control remained with Bunyard. And, specifically, the federal license to sell guns was issued to Bunyard Supply, not to Western Auto Supply Company. There was certainly no partnership between the two companies; so, in the absence of any power on the part of Western Auto Supply Company to control the actions of Bunyard Supply, there is no basis for a finding of

liability on the theory of agency or joint venture. *Hinson* v. *Culberson-Stowers Chevrolet,* 244 Ark. 853, 427 S.W. 2d 539 (1968); *Bennett* v. *Gundolf,* 238 Ark. 582, 383 S.W. 2d 289 (1964).

As to Western Auto Supply Company, the judgment is affirmed; as to Bunyard Supply Company and Marion Bunyard, the judgment is reversed and the cause remanded.