James **HETHERTON** and Carol Hetherton, his wife, Appellants,

v.

**SEARS, ROEBUCK & COMPANY,** a New York Corporation.

No. 78–1471.

United States Court of Appeals, Third Circuit.

Argued Nov. 13, 1978.

Decided Feb. 16, 1979.

Carl A. Agostini, Frederick T. Haase, Jr., Wilmington, Del., for appellants.

Robert F. Maxwell, Arnold J. Bennett, St. Davids, Pa., for appellee.

Before ROSENN, GARTH and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

In this appeal we are asked to decide whether a retail store can be held liable under Delaware law when the ammunition it sold was used to injure an innocent person in an attempted murder and robbery.

We conclude that the district court was in error in granting a summary judgment for the defendant and therefore we will reverse the judgment.

### I.

On February 25, 1976, Lloyd Fullman, Jr. purchased from Sears, Roebuck and Co. (Sears) a .22 caliber rifle and rifle cartridges. Six weeks later, in an attempted robbery of a Wilmington restaurant, Fullman, using the rifle and ammunition purchased at Sears, shot the plaintiff, James Hetherton, in the head. At the time, Hetherton, an off-duty police officer, was employed as a guard in the restaurant. Hetherton was injured seriously and, as of the time of the suit, still had "13 fragments of the projectile in his head." In the related criminal proceeding in state court, Fullman was convicted of attempted second degree murder, attempted robbery, possession of a deadly weapon during the commission of a felony, possession of a deadly weapon by a person prohibited and conspiracy of the second degree. These convictions, however, were not Fullman's first "brush with the law." He had been convicted previously of the felonies of attempted robbery, conspiracy of the second degree, and falsely reporting an incident. As a result of these prior felony convictions Fullman was prohibited under Delaware law from purchasing the rifle and cartridges obtained from Sears. Additionally, Delaware law required Sears, prior to sale, to receive from two freeholders the positive identification of a purchaser of any "deadly weapon." No freeholders identified Fullman when he made his purchase. He merely produced a Delaware driver's license and completed a Federal Firearms Transaction Record, Form 4473.[1] Although Fullman had a criminal record.

---

1. The United States Department of the Treasury is empowered to promulgate rules and regulations to carry out the provisions of the Gun Control Act of 1968, 18 U.S.C. §§ 921–928.

He indicated on Form 4473 that he had never been convicted of a felony.[2]

Hetherton and his wife brought this suit alleging that Sears was negligent when it sold the gun and ammunition to Fullman and Sears was therefore liable for Hetherton's injuries. They asserted that Sears was negligent because it had failed to require at least two freeholders to identify Fullman before making the sale as required by 24 Del.C. § 904;[3] that Sears was negligent because it sold a weapon to a convicted felon without having reasonable cause to believe that the sale was not in violation of state law as required by federal law;[4] that Sears was negligent because it failed to determine whether Delaware law prohibited Fullman from possessing a deadly weapon.[5]

The district court granted Sears' motion for summary judgment, finding that Sears was not liable. *Hetherton v. Sears, Roebuck and Co.*, 445 F.Supp. 294 (D.Del.1978). The plaintiffs assert here (1) that Sears is liable because it negligently failed to require Fullman to produce two freeholders to identify him and (2) that Sears is liable "under ordinary negligence principles."

## II.

Less than a decade ago the National Commission on the Causes and Prevention of Violence stressed that: "The availability of guns contributes substantially to violence in American society. Firearms, particularly handguns, facilitate the commission and increase the danger of the most violent crimes—assassination, murder, robbery and assault." *National Commission on the Causes and Prevention of Violence: Final Report* 169 (1969). The majority of the Commission urged the passage of more vigorous controls of firearms than had ever been enacted in the past. Some opponents of the recommendations felt that the present statutes were, on balance, adequate to protect the victims of crime. Despite the failure of the nation to adopt more comprehensive provisions, we are not entirely with-

---

The Treasury Department has promulgated 27 C.F.R. § 178.124(c) which provides in pertinent part:

> (c) Prior to making an over-the-counter transfer of a firearm to a non-licensee who is a resident of the State in which the licensee maintains his business . . . [the] licensed dealer . . . so transferring the firearm shall obtain a Form 4473 from the transferee showing the name, address, date and place of birth, height, weight, and race of the transferee, and certification by the transferee that he is not prohibited by the Act or . . . the Omnibus Crime Control and Safe Streets Act of 1968 . . . from receiving a firearm in interstate or foreign commerce. The licensee shall identify the firearm to be transferred by listing in the Form 4473 the name of the manufacturer, the name of the importer (if any), the type, model, caliber or gauge, and the serial number of the firearm. Before transferring the firearm described in the Form 4473, the licensee (1) shall cause the transferee to identify himself in any manner customarily used in commercial transactions (e. g., a driver's license), and shall note on the form the method used, and (2) if satisfied that the transferee is lawfully entitled to receive the firearm, shall sign and date the form.

**2.** Fullman was convicted of knowingly making a false statement on the Form 4473 he completed in connection with this sale. *United States*

*v. Fullman, Jr.,* Criminal Action No. 76–132 (D.Del.1977).

**3.** For the text of 24 Del.C. § 904, see fn. 6, *infra,* and accompanying text.

**4.** Title 18 U.S.C. § 922 provides in pertinent part that:

> (b) It shall be unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector to sell or deliver—
> . . .
> (2) any firearm or ammunition to any person in any State where the purchase or possession by such person of such firearm or ammunition would be in violation of any State law.

Title 11 Del.C. § 1448 provides in pertinent part:

> Any person, having been convicted in this State . . . of a felony . . . or any person who has ever been committed for a mental disorder to any hospital, mental institution or sanatorium . . . or any person who has been convicted for the unlawful use, possession or sale of a narcotic, dangerous drug or central nervous system depressant or stimulant drug . . . or of a narcotic drug or controlled substance . . . who purchases, owns, possesses or controls any deadly weapon is guilty of a class E felony.

**5.** 11 Del.C. § 1448, see fn. 4, *supra.*

out federal and state regulation on the sale of weapons.

### A.

At least since 1911, Delaware has had a number of statutes regulating the sale and possession of guns and ammunition including 24 Del.C. § 904, on which the Hethertons rely for a theory of liability.

Section 904 provides that:

Any person desiring to engage in the business described in this chapter shall keep and maintain in his place of business at all times a book which shall be furnished him by the State Tax Department. In such book he shall enter the date of the sale, the name and address of the person purchasing *any deadly weapon*, the number and kind of *deadly weapon* so purchased, the color of the person so purchasing the same, the apparent age of the purchaser, and the names and addresses of at least 2 freeholders resident in the county wherein the sale is made who shall positively identify the purchaser before the sale can be made. (emphasis added)[6]

The starting point in this case has to be what is a "deadly weapon," or more specifically, was the ammunition Fullman purchased from Sears a "deadly weapon" under section 904. Sears argues that neither the rifle nor the ammunition it sold Fullman were "deadly weapons" within the meaning of the statute and therefore Sears was not required to comply with section 904 when it made the sale. While the plaintiffs agree that the rifle was not a "deadly weapon" as defined by the statute, they urge that the rifle cartridges were "deadly weapons" for the purpose of section 904.

Section 904 is a provision of chapter nine, title 24 of the Delaware Code. This chapter regulates "deadly weapons dealers." The chapter includes a definition of "deadly weapons" which is controlling for each of the chapter sections. "Deadly weapons" is defined in section 901 to mean "any pistol or revolver, or *revolver or pistol cartridges*, stiletto, steel or brass knuckles, or other deadly weapon made especially for the defense of one's person". 24 Del.C. § 901 (emphasis added). The ammunition which Fullman purchased was sold as "Sears .22 Long Rifle Extra-Range Hollow Point Cartridges." These ".22 caliber rifle cartridges . . . can be used in many types of pistols and revolvers. Thus, although the ammunition which Fullman purchased was labeled as rifle cartridges, it can also be described as 'revolver or pistol cartridges.' " *Hetherton*, 445 F.Supp. at 297–98 (footnote omitted). Sears asserts that the sale of the ammunition did not fall within the statute because the ammunition was sold and labeled as rifle ammunition and not as pistol or revolver cartridges. As the district court noted:

It is unlikely that the legislature intended to permit dealers to evade either the licensing requirements of § 901 or the recording requirements of § 904 merely by selling a product under one label rather than another. *Id.* at 298.

We agree and hold that cartridges which can be used, without alteration, as pistol cartridges are covered by section 904 regardless of the fortuity of labeling by the retailer.

### B.

Having found that the ammunition was a "deadly weapon" covered by section 904, we must also decide whether Sears' violation of the statute results in liability to the Hethertons. First, it must be determined whether section 904 was enacted for the safety of others. If the statute was enacted for the safety of others, its violation is negligence *per se*. *See, e. g.,*

---

**6.** We note that § 904 was amended after the Fullman purchase to strike the words "freeholders resident in the county wherein the sale is made" from the second sentence and to substitute the words "residents of the State of Delaware." House Bill No. 876, 66 Del.Laws 406 (June 30, 1978). This amendment does not change our disposition of this case. Moreover, it reinforces our belief that section 904 is not an obscure provision providing for an antiquated means of identification but one that reflects Delaware's current concerns with an important and sensitive problem.

*Schwartzman v. Weiner*, 319 A.2d 48 (Del. Super.Ct.1974) (landlord negligent when he failed to provide a handrail on a staircase in violation of housing code); *Farrow v. Hoffecker*, 79 A. 920 (Del.Super.Ct.1906) (defendant negligent when he violated ordinance prohibiting shooting within the city limits). Second, it must be determined whether Hetherton was among the group of individuals the legislature intended to protect. *Wealth v. Renai*, 114 A.2d 809 (Del. Super.Ct.1955) (pedestrians among the class of persons to be protected by statute prohibiting automobile passing at intersections.)

Recognizing the deadliness of firearms and their related components—ammunition, it seems incomprehensible that the primary concern of the legislature in enacting provisions regulating "deadly weapons dealers" could have been anything other than the safety of citizens and the prevention of injuries caused by "deadly weapons." Yet, as so often occurs, our conclusions must be based on the logic of experience rather than any other indication of legislative intent. For in this case, we have found neither relevant legislative history nor pertinent Delaware cases construing the statute in issue.

However, our construction is consistent with cases reviewing gun control legislation from other jurisdictions. For example, in *State v. Sima*, 142 N.J.Super. 187, 192, 361 A.2d 58, 61 (1976), the New Jersey court noted that New Jersey's gun control legislation was designed "to prevent criminals and other unfit elements from acquiring firearms." The United States Supreme Court in construing federal gun control legislation in *Huddleston v. United States*, 415 U.S. 814, 94 S.Ct. 1262, 39 L.Ed.2d 782 (1974) noted that:

> Information drawn from records kept by dealers was a prime guarantee of the Act's effectiveness in keeping "these lethal weapons out of the hands of criminals, drug addicts, mentally disordered persons, juveniles, and other persons whose possession of them is too high a price to pay in danger to us all to allow."

*Id.* at 825, 94 S.Ct. at 1269, *quoting* 114 Cong.Rec. 13219 (1968) (remarks of Sen. Tydings). See also *Franco v. Bunyard*, 547 S.W.2d 91 (Ark.1977) (The purpose of federal gun control laws and regulations is to keep weapons out of the hands of criminals).

We therefore conclude that section 904 was enacted for the safety of others and that the legislature intended to protect innocent persons who might otherwise be injured during the commission of a crime. Thus, Sears' failure to require two freeholders to identify Fullman constituted negligence *per se*.

### C.

The final question under section 904 liability is whether Sears' negligence was the proximate cause of the Hetherton's injuries. If not, the violation does not result in liability. In *Warren v. Anchor Motor Freight*, 81 A.2d 321 (Del.Super.Ct.1951) the Delaware court discussed whether the plaintiff was contributorily negligent because he passed at a railroad crossing which was at the crest of a hill. Although violative of two safety statutes, the negligence was found not to be the proximate cause of the plaintiff's injuries.

Sears asserts and the district court agreed that Sears' failure to comply with the statute did not proximately cause Hetherton's injuries as a matter of law. It asserts that the requirement that a deadly weapons purchaser produce two freeholders serves *only* to verify the identity of the purchaser. It asserts that because Fullman properly identified himself, compliance with the statute would not have affected the sale.

We disagree. We note that the requirement that a purchaser produce two freeholders is a burdensome procedure which reduces the ease and simplicity of obtaining a "deadly weapon." It seems reasonable to conclude that the Delaware legislature was aware of the inconvenience of the requirement and that the legislature intended the inconvenience. It might have been difficult, if not impossible, for someone like

Fullman, who could not legally purchase "deadly weapons," to meet the additional identification requirement. Compliance with the statute would have prevented consummation of the sale at least at that time because Fullman was not accompanied by two freeholders.

In *Franco v. Bunyard, supra,* the Arkansas court discussed issues somewhat similar to those presented by this case. In *Franco* the plaintiffs requested damages for the wrongful deaths and personal injuries which resulted from the defendant's sale of a weapon to an escaped convict. The defendant had sold the weapon without requiring the purchaser to complete Form 4473 as required by federal law.[7] On the issue of proximate cause the court stated

> [I]t is enough to point out that the tragedies could not have occurred as they did if the federal rules had been obeyed. That is, Graham had no means of identification—an essential prerequisite to the purchase of a gun. This is not, as the appellees argue, a mere matter of record keeping. Form 4473 required the seller to obtain and record Graham's identification *before* handing over the gun. Graham had no identification. Thus, had the law been obeyed, he could not have obtained possession of the gun and could not have used it to shoot innocent men the next day. On the issue of foreseeability, we need say only that the very purpose of the law is to keep pistols out of the hands of such persons as Graham, who was both a convicted criminal and a fugitive from justice. It certainly cannot be said that his use of the gun in such a way as to injure others was not foreseeable. Of course it is not required that the precise sequence of events leading to the injury be foreseeable. 547 S.W.2d at 93.

We find further support for our view in the staff report of the National Commission for the Causes and Prevention of Violence. In reviewing the various types of gun control legislation that have been enacted by the states, the staff noted:

Because laws regulating firearms possession are not self-executing, many systems back up the prohibition against gun ownership by bad risk groups with procedures to make it physically more difficult for such persons to obtain firearms.

Staff Report, *National Commission on the Causes and Prevention of Violence: Firearms and Violence in American Life,* 82 (1969).

■■ We do not conclude that as a matter of law a jury must find that Sears' failure to comply with the statute was the proximate cause of Hethertons' injuries. Proximate cause is usually a question for the jury and not an issue for the judge to decide. *See Chudnofsky v. Edwards,* 208 A.2d 516 (Del.1955).

### III.

The plaintiff also asserts that Sears' violated its common law duty of care because it failed to determine whether Fullman was violating Delaware law by purchasing the rifle and ammunition. While the issue is not without difficulty, on the basis of the present record, we do not find that it was reversible error for the trial judge to decide that there was no common law duty breached.

■ We have been unable to find any opinion by the Delaware courts which holds a seller liable for the negligent sale of a firearm to a convicted felon. While there exists a body of Delaware case law on negligence which might otherwise be considered in determining Sears' duty in this instance, we do not feel it need be considered given the facts of this case. We note that the state and federal legislatures have adopted varied legislative schemes designed to regulate the sale of firearms. When a legislature has enacted regulations which define the standard of care to be exercised in a particular situation, an individual's compliance with the statute normally absolves him of any need to take additional precautions absent any special circumstances or dangers. *See* Prosser, *Handbook on the Law of Torts,* § 36 (4th Ed. 1976).

**7.** See footnote 1, *supra.*

We recognize that under the appropriate circumstances it may be necessary for an individual to take precautions beyond those required by statute. *See, e. g. Grand Trunk R. R. Co. v. Ives,* 144 U.S. 408, 12 S.Ct. 679, 36 L.Ed. 485 (1892). This is particularly true in the area of control of dangerous weapons. In some jurisdictions the statutes may not go far enough to establish the standard of due care required by a seller, and in many instances special factors may be present demanding that the seller do more than comply with the statute. On the facts of this case, however, we believe that the federal statute combined with the Delaware law is sufficient to establish the appropriate standard of conduct. Because no special factors were present in this case, Sears needed to do no more than comply with the applicable state and federal law.

We will therefore reverse the judgment of the district court and will remand for further proceedings consistent with this opinion. In such proceedings, there will remain for the consideration of a jury the issues of proximate cause and damages.

Costs taxed against the appellee.