2012 Ark. App. 193

**Royce PACE, Appellant**

v.

**Dean DAVIS, Appellee.**

**No. CA 11–720.**

Court of Appeals of Arkansas.

March 7, 2012.

Christopher Mark Jester and Jeffrey O. Scriber, Jonesboro, for appellant.

Andy Lee Turner, Little Rock, for appellee.

LARRY D. VAUGHT, Chief Judge.

Appellant Royce Pace appeals the order of the Lawrence County Circuit Court granting summary judgment in favor of appellee Dean Davis. The trial court dismissed Royce's claims for negligent entrustment, negligence, and punitive damages. On appeal, Royce argues that the trial court erred in granting summary judgment because there were genuine issues of material fact on those claims. We affirm.

The complaint filed by Royce on January 21, 2009, tells the story of a love triangle among Royce, his ex-girlfriend Kiala Downing, and Kiala's fiancé Michael Davis (Dean Davis's son). According to Royce's complaint, on January 2, 2009, while Kiala and Michael were engaged, Royce and Kiala engaged in consensual sex. On January 3, 2009, Royce received text messages and phone calls from Michael asking Royce to meet to talk. Later that evening, Royce reluctantly agreed to meet Michael at a boat landing on the Spring River.[1] When Royce arrived, Michael was standing outside of his truck. Royce pulled up next to Michael and rolled down his driver's side window. Michael then threw a bottle inside Royce's vehicle and began striking Royce in the face, breaking his nose and lacerating his face. As Royce drove away, Michael went to his vehicle, retrieved a nine-millimeter handgun, and fired two shots at Royce. One of the bullets struck Royce behind his right ear. Royce sought medical treatment immediately, and Michael was apprehended by law enforcement soon thereafter.

Royce's complaint alleged causes of action against Michael and Kiala for assault and battery and sought punitive damages.[2] Royce filed an amended complaint on August 4, 2009, adding Dean as a defendant. Against Dean, Royce asserted negligence and negligent-entrustment causes of action for giving Michael the gun he used to shoot Royce. On June 17, 2010, Royce filed a second amended complaint against Michael and Dean, alleging negligence against Michael, negligence and negligent entrustment against Dean, and punitive damages against both.[3]

---

1. Royce had a friend named Amanda Green accompany him, and Kiala was with Michael.

2. Kiala answered Royce's complaint and filed a counterclaim against him for assault, battery, and the tort of outrage. However, her counterclaim against Royce and his complaint against her were both dismissed by separate orders entered by the trial court on March 25, 2010.

3. On March 9, 2011, an order was entered by the trial court dismissing Royce's lawsuit against Michael with prejudice. The order

In September 2010, Dean filed a motion for summary judgment. Dean admitted that approximately six months prior to the shooting, he gave a gun to his son for protection ₃because Michael had voiced some concern about his safety at the apartment he lived in at college. However, Dean argued that there were no facts supporting the allegation that Michael was incompetent, inexperienced, or reckless or that Dean knew or should have known that his son was incompetent, inexperienced, or reckless; therefore, he owed no duty to Royce as a matter of law. Dean also argued that Royce's punitive-damages claim should be dismissed as a matter of law because it could not be supported by a negligence cause of action. Following a hearing, the trial court granted Dean's motion for summary judgment stating, "the issue here is whether there is proximate cause." On May 19, 2011, an order was entered by the trial court dismissing Royce's claims against Dean with prejudice. It is from this order that Royce appeals.

Summary judgment should only be granted when it is clear that there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. *Collins v. Morgan*, 92 Ark.App. 95, 101, 211 S.W.3d 14, 19 (2005). The purpose of summary judgment is not to try the issues, but to determine whether there are any issues to be tried. *Id.*, 211 S.W.3d at 19. We no longer refer to summary judgment as a "drastic" remedy and now simply regard it as one of the tools in a trial court's efficiency arsenal. *Id.*, 211 S.W.3d at 19. Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.*, 211 S.W.3d at 19–20. On appellate review, we deter-

mine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id.* ₄at 101–02, 211 S.W.3d at 19–20. We view the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* at 102, 211 S.W.3d at 20.

Royce first argues that the trial court erred in granting Dean's motion for summary judgment on his negligent-entrustment claim. He argues that the evidence shows that Michael was an "underage," "immature," "troubled young man" with "a history of violence" with his fiancée; drug-abuse problems; and "a history of psychiatric illness," including "counseling for depression and anxiety." Royce further argues that Dean knew or should have known of his son's problems; therefore, Dean was negligent when he gave Michael a gun and told him to use it for protection.

There are no cases in Arkansas addressing the issue of negligent entrustment of a firearm. However, on many occasions our courts have considered the negligent entrustment of an automobile. In this context, we have held that the elements of negligent entrustment are (1) the entrustee was incompetent, inexperienced, or reckless; (2) the entrustor knew or had reason to know of the entrustee's conditions or proclivities; (3) there was an entrustment of the chattel; (4) the entrustment created an appreciable risk of harm to the plaintiff and a relational duty on the part of the defendant; and (5) the harm to the plaintiff was proximately or legally caused by the negligence of the defendant. *Mills v. Crone*, 63 Ark.App. 45, 49, 973 S.W.2d 828, 831 (1998).

reflects that Royce and Michael reached a settlement.

No duty arises on the part of the entrustor in the absence of facts supporting the incompetence, inexperience, or recklessness of the entrustee and the entrustor's knowledge of the incompetence, inexperience, or recklessness. The first element of negligent entrustment must be established first and, "[a]bsent evidence of the [entrustee's] incompetence as a driver before the accident, there could be no basis for a trial court's finding that factual discrepancies existed regarding allegations" of negligent entrustment. *Ponder v. Gorman,* 94 Ark.App. 159, 162, 227 S.W.3d 428, 430 (2006). Proof of the entrustee's incompetence or recklessness may be made by introducing evidence of his general reputation or evidence of specific acts. *Ark.-La. Lumber Co. v. Causey,* 228 Ark. 1130, 1133, 312 S.W.2d 909, 911 (1958); *see also* Henry Woods, *Negligent Entrustment: Evaluation of a Frequently Overlooked Source of Additional Liability,* 20 Ark. L.Rev. 101 (1966).

The significance placed upon the first element of a negligent-entrustment case was demonstrated in *Ponder v. Gorman.* There, the appellant was injured in a motor-vehicle accident caused by the appellee's son, who was driving a vehicle given to him by the appellee. Appellant's negligent-entrustment claim was based upon evidence that the appellee's son failed to maintain a regular work schedule and had smoked marijuana, which the appellee knew about. In affirming the summary judgment entered by the trial court, our court held that the appellant failed to present evidence of incompetence. *Id.* at 162,

227 S.W.3d at 430. The evidence demonstrated that at the time of the accident, appellee's son was eighteen years old and held a valid Arkansas driver's license; he had never received a traffic citation; he had never been involved in a motor-vehicle accident; he had never been arrested; he did not receive a traffic citation for the accident with appellant; and there was no evidence that he was under the influence of alcohol or other drugs at the time of the accident. *Ponder,* 94 Ark.App. at 163, 227 S.W.3d at 430. "[W]e cannot deem [appellee's] son's failure to maintain a regular work schedule as evidence that appellee's son was in the habit of driving under the influence of marijuana. Nor can we find that appellee's knowledge of his son's use of marijuana was evidence that his son habitually operated a vehicle under the influence of the substance." *Id.* at 162–63, 227 S.W.3d at 430.[4]

When analyzing Royce's allegations of negligent entrustment of a firearm to the above-stated principles of negligent entrustment, we must affirm the trial court's grant of summary judgment. As a matter of law based on the record before us, Royce failed to create a fact question on the issue of whether Michael was incompetent, inexperienced, or reckless with firearms. Significantly, the record is completely devoid of evidence of specific acts demonstrating that Michael, prior to the incident in question, behaved in an incompetent, inexperienced, or reckless manner with a firearm. As such, Royce has been forced to focus on proving the first ele-

4. *See also Fleming v. Stifolter,* 656 F.Supp.2d 764 (W.D.Tenn.2009) (applying Arkansas law) (granting summary judgment in negligent-entrustment-of-a-jet-ski claim based on a lack of evidence of incompetence, inexperience, and recklessness where the evidence was that this was not the entrustee's first occasion to use a jet ski; there was no evidence that the entrustee had not reached the age of majority; while the entrustee had not operated the type of jet ski involved in the accident, it could not be said that he was a novice who lacked the training and experience necessary to use it; there was no evidence that the entrustee was under the influence of any drugs or alcohol at the time of the accident; and there was no evidence that the entrustee had operated the jet ski in a reckless manner).

ment of negligent entrustment by presenting evidence of Michael's general reputation of incompetence, inexperience, or recklessness. Royce has failed to do this.

The evidence is undisputed that Michael was not a minor or "underage" when Dean gave him the gun or when the shooting occurred. Michael was nineteen. The evidence is also undisputed that Michael had "grown up with guns" and had been a hunter all his life. Michael was a properly licensed hunter and had completed a hunter's-safety course. Thus, while Michael had no experience with the particular gun he used to shoot Royce, Michael was not a novice or inexperienced with firearms.

Further, there is no evidence in the record that at any time prior to the shooting in this case Michael behaved recklessly. The evidence presented was that prior to this incident, Michael had no criminal history and had never been arrested. There was no evidence that Michael had been in trouble at school or involved in any physical altercations. Royce testified that Michael had never been violent with him prior to the incident. While Royce argues that Michael had a "history of violence with Kiala," Kiala's only testimony on this point showed that on one occasion Michael slapped her books out of her hands after she pushed him when she tried to leave his house.

Lastly, there is no evidence of incompetence. The record is devoid of evidence that at the time of the shooting Michael was under the influence of drugs or alcohol. *Ponder*, 94 Ark.App. at 163, 227 S.W.3d at 430; *Fleming*, 656 F.Supp.2d at 773. Royce contends that Michael had a history "of psychiatric illness." The rec-

ord reflects that in 2007 (more than a year prior to the shooting), after Michael left home for college, he was prescribed medication for depression and/or anxiety. There is no evidence that Michael received any counseling prior to the shooting. Royce also argues that Michael abused steroids. However, there was no evidence that Michael had steroids in his system at the time of the shooting or that steroids rendered him incompetent in any way on the date of the shooting. *Ponder*, 94 Ark.App. at 162–63, 227 S.W.3d at 430. On this record, Royce has failed to present a fact question on the first element of a negligent-entrustment claim.

Assuming arguendo that Royce did present proof of Michael's incompetence, inexperience, or recklessness, he failed to present proof that Dean knew or should have known of Michael's proclivities. The evidence demonstrates that Michael possessed the gun for approximately six months prior to the incident giving rise to this lawsuit. During that time, there is no evidence that Michael used the gun in an inexperienced, incompetent, or reckless manner. The evidence was in fact undisputed that Michael had never used the handgun prior to the incident involving Royce. Dean testified that Michael was an experienced and responsible hunter, and there is no evidence to the contrary. There is no evidence that Michael told Dean, or anyone else, that he was planning on using the gun to shoot Royce. Additionally, Dean and Michael both testified that Dean did not know about Michael's steroid use until after the shooting. Prior to that time, Michael denied steroid use to his parents.[5] Finally, on the evening of

---

5. If Dean had known of his son's steroid use prior to the accident, such evidence in this case would not likely create a question of fact on the issue of Dean's knowledge of Michael's incompetence. *Ponder*, 94 Ark.App. at 163, 227 S.W.3d at 430 (holding that the entrust-or's knowledge of the entrustee's use of marijuana was not evidence of incompetence, where there was no evidence that the entrustee was under the influence of alcohol or drugs at the time of the accident).

the shooting, the evidence showed that Dean had dinner with Michael and Kiala, and Michael was fine. There was simply no evidence presented that Dean knew or should have known of Michael's alleged incompetent, inexperienced, or reckless proclivities.

Based on the evidence presented, we conclude that, as a matter of law, Royce failed to establish the first and second elements of negligent entrustment. Courts in other jurisdictions that have addressed negligent entrustment of a firearm support our holding. In *Fly v. Cannon*, 813 S.W.2d 458 (Tenn.Ct.App.1991), summary judgment was affirmed in a negligent-entrustment claim in favor of a grandmother who had given her eighteen-year-old grandson a gun that he used to shoot his cousin, who the grandson thought was an intruder. The record was void of evidence indicating that the grandson had ever been irresponsible in the use of any of his firearms prior to the incident or that the grandmother had knowledge of any irresponsible conduct on the part of her grandson in connection with the gun in question or any of the other guns that he owned. *Fly*, 813 S.W.2d at 461. Evidence that the grandmother had concerns that her grandson was sometimes belligerent and hostile and that she was worried that she had lost control of him in no way gave the grandmother knowledge that her grandson might act irresponsibly with his firearms. *Id.*

Likewise, in *McBrayer v. Dickerson*, 192 Ga.App. 725, 386 S.E.2d 173 (1989), summary judgment in a third-party claim for negligent entrustment of a firearm was upheld. In *McBrayer*, one fourteen year old gave a gun to another fourteen year old, and the latter accidentally shot a third party. The evidence was uncontroverted that the entrustee knew how to operate the pistol, and there was no evidence that the entrustee had ever been reckless with firearms, much less habitual in that vice. *McBrayer*, 386 S.E.2d at 173. Moreover, evidence that the entrustee was a below-average student and on some occasions had entertained himself by throwing rocks at cars did not demonstrate his incompetence or habitual recklessness with firearms. *Id.*

Finally, in *Kennedy v. Baird*, 682 S.W.2d 377 (Tex.App.1984), the trial court granted summary judgment in a negligent-entrustment case against a father who had given his twenty-year-old son a rifle, which the son used to shoot two victims. In affirming summary judgment, despite evidence that the son had pushed a fifteen-year-old boy down on one occasion and that the son had a reputation for having a violent temper, the Texas appellate court held that the plaintiffs failed to prove the father's actual knowledge of his son's propensity to commit the act complained of or to use the rifle dangerously. *Kennedy*, 682 S.W.2d at 379.

In sum, having concluded that Royce failed to satisfy the first and second elements of negligent entrustment, we hold that the trial court did not err in granting summary judgment on that cause of action.[6]

Royce also argues that the trial court erred in granting summary judgment of his negligence claim. The essential elements of a cause of action for negli-

---

6. We acknowledge that while the summary-judgment order offered no explanation for the dismissal of Royce's lawsuit, the trial court at the summary-judgment hearing appeared to have granted the motion based on its conclusion that there was a lack of evidence of proximate causation. Nevertheless, we can affirm a ruling of a trial court if it reached the right result, even though it may be for a different reason. *Almobarak v. McCoy*, 84 Ark.App. 152, 154, 137 S.W.3d 440, 441 (2003).

gence are that the plaintiff show a duty owed and a duty breached, and that the defendant's negligence was a ₁₁proximate cause of the plaintiff's damages. *Scott v. Cent. Ark. Nursing Ctrs., Inc.,* 101 Ark. App. 424, 434, 278 S.W.3d 587, 595 (2008). The issue of duty is always one for the trial court and not for the jury. *D.B. Griffin Warehouse, Inc. v. Sanders,* 336 Ark. 456, 463, 986 S.W.2d 836, 840 (1999). If no duty of care is owed, summary judgment is appropriate. *Holloway v. Stuttgart Reg'l Med. Ctr.,* 62 Ark.App. 140, 142, 970 S.W.2d 301, 302 (1998).

Royce contends that Arkansas courts have consistently held that third parties who negligently provide firearms to a person who thereafter uses the firearm to inflict injury are subject to suit for their own independent acts of negligence. He relies on two cases, *Franco v. Bunyard,* 261 Ark. 144, 547 S.W.2d 91 (1977), and *Cullum & Boren–McCain Mall, Inc. v. Peacock,* 267 Ark. 479, 592 S.W.2d 442 (1980). These cases are distinguishable.

In *Franco,* the issue presented was whether a store negligently sold a firearm to an escaped convict who used the gun to murder two victims and wound a third. *Franco,* 261 Ark. at 145, 547 S.W.2d at 92. Summary judgment was entered in favor of the store, but reversed on appeal by our supreme court based on the argument that the store violated federal statutes and regulations relating to the sale of guns, which was evidence of negligence. *Id.* at 147–48, 547 S.W.2d at 92–93. *Franco* is inapplicable to the instant case as Royce has not alleged or developed the argument by citation to authority that Dean violated any state or federal statutes or regulations.[7]

We will not consider an issue if the appellant has failed to cite to any ₁₂convincing legal authority in support of his argument. *Walters v. Dobbins,* 2010 Ark. 260, at 6–7, 370 S.W.3d 209, 213.

In *Cullum,* the appellee was shot by a man who purchased a gun from a store. The appellee (and his wife) alleged negligence on the part of the store, and a jury agreed, awarding the appellees damages. One of the points on appeal raised by the store was that the trial court erred in failing to direct a verdict on the appellees' negligence claim. *Cullum,* 267 Ark. at 480, 592 S.W.2d at 443. Our supreme court affirmed on this point, holding that the evidence presented was sufficient to submit to the jury. The evidence on which the court relied was testimony that the purchaser said he wanted the gun to "blow a big hole in a man" and that the purchaser was acting suspiciously when he was making his purchase. *Id.* at 481–82, 592 S.W.2d at 444.

█ The facts in the case at bar are distinguishable from those in *Cullum.* Dean gave the gun to Michael six months before the shooting occurred. There is no evidence that Michael used the gun during that time. There is no evidence that Michael said anything to Dean (or anyone else) about using the gun to shoot Royce. Finally, Dean testified that he had dinner with Michael and Kiala the night of the shooting and that Michael acted normally. As a matter of law, the evidence in this case fails to establish that Dean owed a duty to Royce. Accordingly, we affirm the grant of summary judgment on the negligence claim.[8]

---

7. Royce merely makes vague and conclusory references to the fact that Dean gave his "underage" son a gun in violation of "federal law."

8. Again, we can affirm a ruling of a trial court if it reached the right result, even though it may be for a different reason. *Almobarak,* 84 Ark.App. at 154, 137 S.W.3d at 441.

Royce's final argument is that the trial court erred in granting summary judgment on his punitive-damages claim. Because we conclude that the trial court's summary-judgment order on the issues of negligent entrustment and negligence should be affirmed, this third point on appeal is moot.

Affirmed.

GRUBER and GLOVER, JJ., agree.